IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:19-cv-00354 |
| | ) | |
| v. | ) | |
| | ) | |
| SOUTHERN COAL CORPORATION; | ) | |
| A & G COAL CORPORATION; | ) | |
| JUSTICE COAL OF ALABAMA LLC; | ) | |
| BLACK RIVER COAL LLC; | ) | |
| CHESTNUT LAND HOLDINGS LLC; | ) | |
| DOUBLE BONUS COAL COMPANY; | ) | |
| DYNAMIC ENERGY INC.; FOUR | ) | |
| STAR RESOURCES LLC; FRONTIER | ) | |
| COAL COMPANY, INC.; INFINITY | ) | |
| ENERGY INC.; JUSTICE ENERGY | ) | |
| COMPANY, INC.; JUSTICE | ) | |
| HIGHWALL MINING, INC.; | ) | |
| KENTUCKY FUEL CORP., | ) | |
| KEYSTONE SERVICES INDUSTRIES | ) | |
| INC.; M & P SERVICES, INC.; NINE | ) | |
| MILE MINING COMPANY, INC.; | ) | |
| NUFAC MINING COMPANY, INC.; | ) | |
| PAY CAR MINING INC.; PREMIUM | ) | |
| COAL COMPANY, INC.; S AND H | ) | |
| MINING, INC.; SEQUOIA ENERGY, | ) | |
| LLC; TAMS MANAGEMENT, INC.; | ) | |
| VIRGINIA FUEL CORP., | ) | |
| | ) | |
| Defendants. | | |

**UNITED STATES' RESPONSE IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

The United States of America brought this action against 23 mine operating companies—

Southern Coal Corporation, A&G Coal Corporation, Justice Coal of Alabama LLC, Black River

Coal LLC, Chestnut Land Holdings LLC, Double Bonus Coal Company, Dynamic Energy Inc.,

Four Star Resources LLC, Frontier Coal Company, Inc., Infinity Energy Inc., Justice Energy

1

Company, Inc., Justice Highwall Mining, Inc., Kentucky Fuel Corp., Keystone Services Industries Inc., M & P Services, Inc., Nine Mile Mining Company, Inc., Nufac Mining Company, Inc., Pay Car Mining Inc., Premium Coal Company, Inc., Premium Coal Company, Inc., S and H Mining, Inc., Sequoia Energy, LLC, TAMS Management, Inc., and Virginia Fuel Corp. (collectively, "Defendants")—to collect unpaid civil monetary penalties assessed under the Mine Safety and Health Act of 1977, as amended, 30 U.S.C. § 901, *et seq.* ("Mine Act"), and the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. § 3001, *et seq.*

In response to the Complaint, nine of the defendant companies filed a Motion to Dismiss for Lack of Personal Jurisdiction. ECF No. 4. The Court should deny the Motion to Dismiss because the FDCPA creates nationwide jurisdiction to enforce debts owed to the United States. Moreover, the Court should deny the Motion for the independent reason that it has both general and specific personal jurisdiction over the companies.

## INTRODUCTION

On May 7, 2019, the United States filed this action against 23 mine operators for their failure to pay penalties for violations of the Mine Act at 51 mines across five different states. Fourteen of the defendants answered the Complaint. The following nine defendants moved to dismiss for lack of personal jurisdiction: Double Bonus Coal Company, Dynamic Energy, Inc., Frontier Coal Company, Justice Energy Company, Justice Highwall Mining, Inc., Keystone Services Industries, Inc., M&P Services, Inc., Nufac Mining Company, Inc., and Pay Car Mining Company, Inc. (collectively, "Movants"). *See* ECF No. 4. Each Movant argues—some in flat contradiction to their own court filings in other cases in this district—that the Court lacks general personal jurisdiction because the company is not incorporated in Virginia and allegedly does not maintain its principal place of business in Virginia. *See* Mem. in Supp. at 1–3, ECF No. 5. Each

2

Movant also argues the Court lacks specific personal jurisdiction because the company has not allegedly availed itself of Virginia and because the mines operated by the company are outside Virginia. *Id.* at 9–15. The Movants filed a sworn affidavit by their parent company's (Bluestone Resources, Inc.) Chief Operating Officer ("COO") in support of these arguments. Lusk Aff. ¶¶ 1, 3, ECF No. 5-1. COO Lusk swears that each Movant is a subsidiary of Bluestone and purportedly has its principal place of business in Daniels, West Virginia.

> 1. I am the Chief Operating Officer of Bluestone Resources, Inc. Double Bonus Coal Company, Dynamic Energy, Inc., Frontier Coal Company, Inc., Justice Energy Company, Inc., Justice Highwall Mining, Inc., Keystone Service Industries, Inc. M&P Services, Inc., NuFac Mining Company, Inc., and Pay Car Mining, Inc. are all wholly-owned subsidiaries of Bluestone Resources, Inc.
>
> 2. In my capacity as the Chief Operating Officer of Bluestone Resources, Inc., I am knowledgeable regarding the operational, managerial and mining related activities of each of the entities identified in paragraph 1 above.
>
> 3. The entities identified in paragraph 1 above are not incorporated in the Commonwealth of Virginia and do not maintain their principal place of business in Virginia. The principal place of business for the entities identified in paragraph 1 above is in Daniels, West Virginia.

*Id.* He also swears that the accounting functions for the Movants are performed in Daniels, West Virginia. *Id.*

3

Case 7:19-cv-00354-GEC   Document 33   Filed 07/23/19   Page 3 of 18   Pageid#: 110

> 8. The accounting functions for the entities identified in paragraph 1 above are performed in our Daniels, West Virginia office. In fact, David Harrah is the Chief Financial Officer and he maintains his office in Daniels, West Virginia.

*Id.*

Movants' expedient assertions are belied by their sworn statements in other cases, as detailed below.

First, four of the Movant companies stated to this Court in May 2019 that they have their principal places of business in Roanoke, Virginia, not in Daniels, West Virginia. On May 17, 2019, four of the nine Movants—Dynamic Energy, Frontier Coal, Justice Energy, and Pay Car Mining—explicitly invoked this Court's jurisdiction in a complaint for declaratory judgment against the United States Office of Surface Mining Reclamation Enforcement, Department of Interior ("OSMRE"). *See* Complaint, *James C. Justice III v. OSMRE*, No. 7:19cv381 (W.D. Va. May 17, 2019), attached as Exhibit A (hereinafter "OSMRE complaint"). Legal counsel for the mine operating companies in the case against OSMRE is the same legal counsel for the companies in the present case. Indeed, the OSMRE complaint was signed by that same attorney who signed the present Motion to Dismiss. As shown below, in the OSMRE complaint, the Movants state that Dynamic Energy, Frontier Coal, Justice Energy, and Pay Car Mining each have their principal places of business in Roanoke, Virginia. *Id.* ¶¶ 5, 6, 7, 10.

4

5. Plaintiff Dynamic Energy, Inc. ("Dynamic") is a West Virginia corporation with its principal place of business in Roanoke, Virginia and doing business or having done business in West Virginia that was the subject of various assessments by the Defendant.

6. Plaintiff Frontier Coal Company ("Frontier") is a Delaware corporation with its principal place of business in Roanoke, Virginia and doing business or having done business in West Virginia that was the subject of various assessments by the Defendant.

7. Plaintiff Justice Energy Company, Inc. ("Justice Energy") is a West Virginia corporation with its principal place of business in Roanoke, Virginia and doing business or having done business in West Virginia that was the subject of various assessments by the Defendant.

10. Plaintiff Pay Car Mining, Inc. ("Pay Car") is a West Virginia corporation with its principal place of business in Roanoke, Virginia and doing business or having done business in West Virginia that was the subject of various assessments by the Defendant.

Ex. A at 2–3.

Second, two of those same companies, along with two other Movants, availed themselves of this Court's jurisdiction just a few years ago. On September 30, 2016, Dynamic Energy,

5

Justice Highwall, Nufac Mining, and Pay Car Mining filed a consent decree in this Court regarding Clean Water Act violations explicitly accepting this Court's jurisdiction because many of the defendants "are located, reside, and/or are doing business" here. Consent Decree ¶¶ 1, 3, *United States v. Southern Coal Corp.*, No. 7:16-cv-00462-GEC (W.D. Va. Sept. 30, 2016), attached as Exhibit B.

Lastly, these Court filings showing proper jurisdiction in this district are further supported by the sworn testimony of Justice Energy's and Bluestone's officers. In a deposition on March 14, 2019, James Justice III testified under oath that Stephen Ball was the "best to ask" and "would have the most knowledge" about the structure of Bluestone and how the subsidiaries are interrelated. Justice Dep. 15:2–4, attached as Exhibit C. On that same day, Ball, who is the Vice President and General Counsel of Defendant Justice Energy Company, testified that the business address of Justice Energy was 302 South Jefferson Street, Roanoke, Virginia, and that Bluestone Resources is also operated out of 302 South Jefferson Street, Roanoke, Virginia. *See* Ball Dep. 22:5–23:23, attached as Exhibit D. Contrary to the Lusk affidavit submitted by Movants in this case, Ball testified under oath that "to the extent, Justice Energy has any accounting or anything like that, that's all done out of the 302 South Jefferson location. And Blue Stone Resources as the ultimate parent company provides those services to their subsidiaries." *Id.* 22:11–22:16.

Moreover, Ball's deposition highlights the intimate nature of the parent-subsidiary relationship between Bluestone and Movants. In addition to accounting services, Bluestone supplies the administrative and financial services for Movants, maintains a group insurance policy for its subsidiaries, files a consolidated tax return for all its subsidiaries, and supplies the funds to pay the limited employees of Justice Energy. *Id.* 22:5–25:15. Movants' stunning

6

assertion now that they have no ties to the Western District of Virginia is negated by the ample evidence to the contrary.

## STANDARD OF REVIEW

Although personal jurisdiction is an affirmative defense, "the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). This burden, however, "varies according to the posture of a case and the evidence that has been presented to the court." *Id.* at 268. "[T]he court must take the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff," and a plaintiff need only make a *prima facie* showing of personal jurisdiction for the litigation to proceed. *Id.*; *see also Sneha Media & Entm't, LLC v. Assoc. Broad. Co. P Ltd.*, 911 F.3d 192, 196 (4th Cir. 2018) ("To be sure, when the parties have not yet had a fair opportunity to develop and present the relevant jurisdictional evidence, we have treated the disposition of Rule 12(b)(2) motions to dismiss for a lack of personal jurisdiction in conceptually the same manner as we treat the disposition of motions to dismiss under Rule 12(b)(6) . . . ."); *Gilmore v. Jones*, 370 F. Supp. 3d 630, 650 (W.D. Va. 2019) (Moon, J.) ("In conducting its analysis, the court 'must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.'" (quoting *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014))).

## ARGUMENT

I. **The Federal Debt Collection Procedures Act creates nationwide jurisdiction for actions to collect debts owed to the United States.**

The purpose of the FDCPA was "to create a comprehensive statutory framework for the collection of debts owed to the United States government,' in order 'to improve the efficiency

7

and speed in collecting those debts.'" *Nat'l Labor Relations Bd. v. E.D.P. Med. Comput. Sys., Inc.*, 6 F.3d 951, 954 (2d Cir. 1993) (quoting H.R. Rep. No. 736 (1990), *reprinted in*, 1990 U.S.C.C.A.N. 6472, 6630, 6631). The FDCPA "provides *exclusive* civil procedures for the United States to recover a judgment on a debt." 28 U.S.C. § 3001(a) (emphasis added); *Export-Import Bank of U.S. v. Asia Pulp & Paper Co., Ltd.*, No. 03-8554 (DCP), 2008 WL 465169, at *1 (S.D.N.Y. Feb. 6, 2008). To allow the government to enforce its collection rights, the FDCPA explicitly provides for "nationwide enforcement" of federal debts by providing that "any . . . complaint, filed under this chapter may be served in any state and . . . may be enforced by the court." 28 U.S.C. § 3004(b).

The numerous district courts that have considered the issue of personal jurisdiction under the FDCPA have uniformly held that the FDCPA creates national jurisdiction such that the government "need only show that Defendant has sufficient minimum contacts with the United States so as not to violate the traditional notions of fair play and substantial justice." *United States v. Coker*, No. 2:09-02012, 2010 WL 4286380, at *2 (E.D. Cal. Oct. 22, 2010); *see also United States v. Hurry*, No. 2:15CV106–WHA, 2015 WL 1897182, at *1–2 (M.D. Ala. Apr. 27, 2015) (finding that "the FDCPA provides for nationwide service of process" and therefore, personal jurisdiction exists "over any defendant that has minimum contacts with the United States" (citation omitted)); *United States v. Preston*, 961 F. Supp. 2d 133, 136 (D.D.C. 2013) (noting nationwide jurisdiction in finding nationwide venue); *United States v. Rogan*, No. 02 C 3310, 2008 WL 4853478, at *2 (N.D. Ill. Nov. 3, 2008) (considering the defendant's minimum contacts with the United States to find nationwide jurisdiction under FDCPA); *Reese Bros., Inc. v. U.S. Postal Serv.*, 477 F. Supp. 2d 31, 39 (D.D.C. 2007) (same); *United States v. Sutton*, No.

8

3:04-cv-00596(EBB), 2005 WL 281162, at *1 (D. Conn. Jan. 10, 2005) (same); *United States v. Famous Artists Corp.*, No. 95-5240, 1996 WL 114932, at *4 (E.D. Pa. Mar. 14, 1996) (same).

In other words, nationwide jurisdiction is proper when "the defendant has acted within any district of the United States or sufficiently caused foreseeable consequences in this country." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 2280 (9th Cir. 2004) (quoting *Sec. Inv. Prot. Corp. v. Vigman*, 764 F.2d 1309, 1316 (9th Cir. 1985)); *Bally Gaming, Inc. v. Kappos*, 789 F. Supp. 2d 41, 45 (D.D.C. 2011) ("Prior opinions of the D.C. Circuit make clear that, when this Court derives its personal jurisdiction over a defendant from a federal statute's nationwide-service-of-process provision, the Due Process Clause of the Fifth Amendment does not require that the defendant also have minimum contacts with this district."); *see also* Fed. R. Civ. P. 4(k)(1)(C) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . when authorized by a federal statute."); *Coker*, 2010 WL 4286380, at *2 (discussing *Action Embroidery Corp.*). Because the FDCPA allows for nationwide service of process and in turn, nationwide personal jurisdiction, the United States is the relevant forum for the personal jurisdiction analysis, not the individual district court. Here, there is no dispute the Movants have substantial contacts with the United States; indeed, they are incorporated in the United States, operate mines in the United States, and are extensively regulated by numerous federal agencies. Accordingly, the Court should deny the Motion to Dismiss for lack of personal jurisdiction.

## II. Aside from the FDCPA's nationwide jurisdictional reach, the Court has personal jurisdiction over Movants.

Even if the FDCPA did not provide the Court personal jurisdiction over Movants, the Court has both general and specific personal jurisdiction, either of which is alone sufficient.

When a federal statute does not otherwise establish personal jurisdiction, courts employ a two-part inquiry: (1) whether the forum state's long-arm statute provides jurisdiction, and (2) whether exercising jurisdiction would violate defendant's due process. *Wolf v. Richmond Cty. Hosp. Auth.*, 745 F.2d 904, 909 (4th Cir. 1984). "Because Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause, 'the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.'" *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (citation omitted) (quoting *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135–36 (4th Cir. 1996)).

Whether personal jurisdiction comports with due process is governed by the minimum contacts test. The canonical opinion remains *International Shoe v. Washington*, 326 U.S. 310 (1945), in which the Supreme Court held that courts may exercise personal jurisdiction over a defendant if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316 (citation omitted). The minimum contacts test is satisfied and a Court will have general jurisdiction over the defendant when a defendant company is incorporated in the state or maintains its principal place of business in the state, or if it has such ongoing systematic dealings within the state as to render it essentially at home in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014). If the Court does not have general jurisdiction over a defendant company, the minimum contacts test may still be satisfied and give rise to specific jurisdiction over the defendant "based on conduct connected to the suit." *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002). Here, the Court has both general and specific personal jurisdiction over Movants.

### A. Movants have sufficient minimum contacts for general jurisdiction in Virginia because they operate their businesses out of Roanoke, Virginia.

For corporate defendants, general jurisdiction exists in the place of incorporation or its principal place of business. *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 735. If the corporation does not "reside" in the forum state, general personal jurisdiction exists when the "corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum [s]tate.'" *Daimler AG*, 571 U.S. at 138 (citing *Goodyear*, 564 U.S. at 919). Movants assert through the Lusk Affidavit that they have no ties to Virginia, but this is directly contrary to Movants' sworn testimony and recently filed statements with this Court.

First, four of the Movants, Dynamic Energy, Frontier Coal, Justice Energy, and Pay Car Mining, stated in a recent filing with this Court that their principal places of business are in Roanoke, Virginia. *See* Compl. ¶¶ 5, 6, 7, 10, *Justice v. Office of Surface Mining Reclamation & Enforcement*, No. 7:19-cv-00381 (W.D. Va. May 17, 2019). The government filed the Complaint in this case against the four Movants on May 7, 2019. Only ten days later, on May 17, 2019, in an unrelated matter, the same four Movants filed a complaint in this district. In that complaint, the four Movants stated that their principal places of business are in Roanoke, Virginia. Then on July 9, 2019, the same four Movants, represented by the same counsel, filed a Motion to Dismiss the government's Complaint in this case, claiming that the four companies do *not* have their principal places of business in Roanoke, Virginia. These statements are flatly contradictory.

The government endeavored to confirm which of Movants' characterizations of their principal places of business was accurate. In so doing, the government learned that in other recent litigation, the Vice President and General Counsel of Justice Energy Company, Inc.—one

11

of the four Movants—testified under oath that Justice Energy's address is indeed 302 South Jefferson Street, Roanoke, Virginia. *See* Ex. D, Ball Dep. 22:5–21 ("[I]n terms of the business address for Justice Energy is 302 South Jefferson Street in Roanoke, Virginia"). The representations made by Dynamic Energy, Frontier Coal, Justice Energy, and Pay Car Mining in support of their Motion to Dismiss that they do not have their principal places of business or operate in this district are frivolous. Moreover, these representations violate Federal Rule of Civil Procedure 11 in light of the fact that these same companies stated that they *do* have their principal places of business in Roanoke only ten days after receiving the present Complaint, while represented by the same counsel. In short, the Court need go no further than Movants' own statements to determine it has personal jurisdiction here.[1]

Second, all nine Movants have the same parent company, Bluestone, and that company also is based in Roanoke, Virginia. *See* Lusk Aff. ¶ 1, ECF No. 5-1. James Justice III testified that Stephen Ball was the "best to ask" and "would have the most knowledge" about the structure of Bluestone and its subsidiaries. Ex. C., Justice Dep. 15:2–4. Stephen Ball, the Vice President and General Counsel of Justice Energy Company testified, under oath, that the business operations for Bluestone are performed from 302 South Jefferson Street, Roanoke, Virginia. *See* Ex. D, Ball Dep. 22:5–21 ("Who else is located at that particular address? A. That's the address where Blue Stone Resources is operated out of. And so to the extent, Justice Energy has any accounting or anything like that, that's all done out of the 302 South Jefferson location. And Blue Stone Resources as the ultimate parent company provides those services to their subsidiaries."). Justice Energy Company does not have its own employees who supply or

---

[1] The government respectfully reserves the right to seek sanctions against Movants under Federal Rule of Civil Procedure 11(c)(2) for violations of Rule 11(b) arising from their apparent misrepresentations regarding the principal places of business and locations of operations of four of the named defendants, if the Court does not otherwise order a motion to show cause.

12

perform financial services for the company, and thus, it relies on its parent company to provide all of those services. *Id.* 22:22–24:23. Bluestone also "files a consolidated tax return for itself and all of its subsidiaries." *Id*. 24:5–18. And Bluestone puts funds into the Justice Energy account to make payroll. *Id.* 25:8–12.

Third, in sworn testimony, James Justice III stated that he "ha[s] the ultimate decision making authority" for "major financial decision[s]" of Justice Energy Company and all of the other mine-operator subsidiaries of Bluestone and Southern Coal, which he and his father own, which includes Movants. Ex. C, Justice Dep. 13:2–14:1. James Justice III is also the Controller of each Movant company, as defined in the Mine Act and disclosed to the Mine Safety and Health Administration ("MSHA"). Most importantly for this inquiry, Justice operates his business out of the offices at 302 South Jefferson Street, Roanoke, Virginia. *See* Complaint ¶ 1, *James C. Justice III v. Office of Surface Mining Reclamation & Enf't*, No. 7:19cv381 (W.D. Va. May 17, 2019).

It is clear that all nine Movants reside in Virginia and/or have continuous and systematic ties to Virginia, and therefore, the Court has general personal jurisdiction over them. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 448 (1952) (finding general personal jurisdiction existed because the defendant company's president maintained an office within the state where he maintained the company's files and oversaw the company's activities).

### B. The Court separately has specific jurisdiction over Movants because they have purposefully availed themselves of Virginia by conducting their business from Roanoke, Virginia.

The Court also has specific jurisdiction over Movants. Specific jurisdiction exists when (1) the defendant "purposefully availed itself of the privileges of conducting activities in the forum state," (2) "the plaintiff's claim arises out of the defendant's forum-related activities," and

13

(3) exercise of personal jurisdiction would be constitutionally reasonable. *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (citations omitted).

First, to determine whether a defendant has "purposefully availed itself" of the forum, courts look at whether "the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there." *Fed. Ins. Co. v. Lake Shore Inc.*, 886 F.2d 654, 658 (4th Cir. 1989). Because the parent company of Movants operates all of the financial aspects of Movants from Roanoke, Virginia, it is entirely reasonable that Movants could expect to be sued in Virginia for failure to pay a debt, particularly in light of the fact that four of Movants initiated suit against the government on May 17, 2019, in this Court, regarding a separate debt owed to the United States, asserting that Roanoke is their principal place of business. Movants claim otherwise in their Motion, but at this stage and in light of the contradictory statements filed by Movants within weeks of each other, the Court should weigh the evidence in favor of finding jurisdiction. *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016).

Second, Movants assert that the acts or omissions giving rise to the cause of action are their mining activities in West Virginia. *See* Mem. in Supp. at 13–14, ECF No. 5. That argument, however, misses the point. This case is a debt collection action pursuant to the FDCPA. The underlying Mine Act violations and the appropriateness of the civil penalties assessed by MSHA are not at issue because the time in which to challenge those assessments has long since passed. *See* 30 U.S.C. § 815(a) ("If . . . the operator fails to notify the Secretary that he intends to contest the citation or the proposed assessment of penalty . . . the citation and the proposed assessment of penalty shall be deemed a final order of the Commission and not subject to review by any court or agency.").

14

The only issues in this case are (1) the existence of a debt as defined by the FDCPA, (2) whether Defendants owe the debt, and (3) whether the debt is owed to the United States. The relevant act or omission giving rise to this cause of action is Movants' willful failure to pay the assessed civil penalties, and the accounting operations for Movants are conducted from 302 South Jefferson Street, Roanoke, Virginia. *See* Ex. D, Ball Dep. 22–23. The relevant conduct or omission giving rise to this action thus occurred in the Western District of Virginia, and the second prong for specific personal jurisdiction is met.

Third, exercise of jurisdiction in Virginia is constitutionally reasonable. In determining whether personal jurisdiction is constitutionally reasonable, courts consider five factors: (1) the burden on Defendant of litigating in the forum; (2) the forum state's interest in adjudicating the dispute; (3) Plaintiff's interest in obtaining convenient and effective relief; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). Here, the United States as the plaintiff has an interest in obtaining convenient and effective relief in one case against all the defendants instead of litigating the same issues in two different courts. The United States would have to put on the same witnesses twice in two different states, and those witnesses are local to neither Virginia nor West Virginia. To force the United States to expend resources to litigate this case in two separate courts when it has already spent tremendous resources to collect these unpaid civil penalties is against the interests of justice. *See United States v. Sutton*, No. 3:04-CV-00596(EBB), 2005 WL 281162, at *3 (D. Conn. Jan. 10, 2005) ("To expect an Assistant U.S. Attorney from the District of New Hampshire to become as intimately familiar with these

15

cases as the two Assistants from Connecticut already are is to request unreasonable, unnecessary duplication of effort, time, and expense to the Government."). Moreover, it is not unreasonably burdensome on Movants to litigate here. Movants have hired counsel in Virginia, and their operations are all overseen by James Justice III, who lives and conducts his business in Roanoke, Virginia. Ex. C, Justice Dep. 13:20–14:1. In sum, it is constitutionally reasonable for this Court to exercise personal jurisdiction over Movants, and the Court should deny their Motion to Dismiss.

## CONCLUSION

Based on the foregoing, the United States respectfully requests that the Court deny Defendants' Motion to Dismiss for Lack of Personal Jurisdiction. In the alternative, the United States requests that the Court stay Defendants' Motion and allow the United States to conduct jurisdictional discovery. If the Court finds that it lacks personal jurisdiction over Defendants, the United States respectfully requests that the Court transfer the case against Movants to the U.S. District Court for the Southern District of West Virginia.

Respectfully submitted,

THOMAS T. CULLEN
United States Attorney

Date: July 23, 2019

*/s/ Laura Day Rottenborn*
Laura Day Rottenborn
Assistant United States Attorney
Virginia State Bar No. 94021
Illinois State Bar No. 6289334
United States Attorney's Office
P. O. Box 1709
Roanoke, VA 24008-1709
Telephone: (540) 857-2250
Facsimile: (540) 857-2283
E-mail: Laura.Rottenborn@usdoj.gov

16

/s/ *Krista Consiglio Frith*
Assistant United States Attorney
Virginia Bar No. 89088
United States Attorney's Office
P. O. Box 1709
Roanoke, VA 24008-1709
Telephone: (540) 857-2250
Facsimile: (540) 857-2283
E-mail: Krista.Frith@usdoj.gov

/s/ *Jason S. Grover*
Special Assistant United States Attorney
Illinois Bar No. 6256032
Counsel for Trial Litigation
Mine Safety and Health Division
Office of the Solicitor
U.S. Department of Labor
201 12th Street South
Suite 401
Arlington, VA 22202
Telephone: (202) 693-9326
Facsimile: (202) 693-9392
Email:  grover.jason@dol.gov

CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2019, I caused a true copy of the foregoing United States' Response in Opposition to Defendants' Motion to Dismiss to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties.

*/s/ Krista Consiglio Frith*
Krista Consiglio Frith
Assistant United States Attorney