EXHIBIT A

| | |
|---|---|
| JAMES C. JUSTICE III;<br>A & G COAL CORP.;<br>CHESTNUT LAND HOLDINGS, LLC;<br>BLUESTONE COAL CORPORATION;<br>DYNAMIC ENERGY, INC.;<br>FRONTIER COAL COMPANY;<br>JUSTICE ENERGY COMPANY, INC.;<br>KENTUCKY FUEL CORPORATION;<br>NATIONAL COAL, LLC;<br>PAY CAR MINING, INC.;<br>PREMIUM COAL COMPANY,<br>INCORPORATED;<br>S AND H MINING, INC.;<br>and<br>TAMS MANAGEMENT, INC.,<br><br>        Plaintiffs,<br><br>v.<br><br>OFFICE OF SURFACE MINING<br>RECLAMATION AND ENFORCEMENT,<br>UNITED STATES DEPARTMENT OF<br>THE INTERIOR,<br><br>        Defendant. | Case No. <u>7:19cv381</u><br><br><br><br><br><br><br><br><br><br><br>**COMPLAINT FOR**<br>**<u>DECLARATORY JUDGMENT</u>** |

Plaintiffs, A & G Coal Corp., Bluestone Coal Corporation, Chestnut Land Holdings, LLC, Dynamic Energy, Inc., Frontier Coal Company, Justice Energy Company, Inc., Kentucky Fuel Corporation, National Coal, LLC, Pay Car Mining, Inc., Premium Coal Company, Incorporated, S and H Mining, Inc., Tams Management, Inc. and James C. Justice III, by counsel, and for their Complaint for Declaratory Judgment, respectfully state as follows:

# I. THE PARTIES, JURISDICTION AND VENUE

## A. The Parties

1. Plaintiff James C. Justice III ("Jay Justice") is an individual residing in Roanoke, Roanoke County, Virginia. Jay Justice is the "Controller" of the "Justice Mining Entities" (as that phrase is defined below) for purposes of enforcement of surface mining reclamation and enforcement laws and regulations by the Defendant.

2. Plaintiff A & G Coal Corp. ("A & G") is a Virginia corporation with its principal place of business in Roanoke, Virginia and doing business or having done business in Wise and Dickenson Counties, Virginia that was the subject of various assessments by the Defendant.

3. Plaintiff Chestnut Land Holdings, LLC ("Chestnut") is a Delaware limited liability company with its principal place of business in Roanoke, Virginia and doing business or having done business in Tazewell County in Virginia that was the subject of various assessments by the Defendant.

4. Plaintiff Bluestone Coal Corporation ("Bluestone") is a West Virginia corporation with its principal place of business in Roanoke, Virginia and doing business or having done business in West Virginia that was the subject of various assessments by the Defendant.

5. Plaintiff Dynamic Energy, Inc. ("Dynamic") is a West Virginia corporation with its principal place of business in Roanoke, Virginia and doing business or having done business in West Virginia that was the subject of various assessments by the Defendant.

6. Plaintiff Frontier Coal Company ("Frontier") is a Delaware corporation with its principal place of business in Roanoke, Virginia and doing business or having done business in West Virginia that was the subject of various assessments by the Defendant.

7.     Plaintiff Justice Energy Company, Inc. ("Justice Energy") is a West Virginia corporation with its principal place of business in Roanoke, Virginia and doing business or having done business in West Virginia that was the subject of various assessments by the Defendant.

8.     Plaintiff Kentucky Fuel Corporation ("Kentucky Fuel") is a Delaware corporation with its principal place of business in Roanoke, Virginia and doing business or having done business in Kentucky that was the subject of various assessments by the Defendant.

9.     Plaintiff National Coal, LLC ("National Coal") is a Tennessee limited liability company with its principal place of business in Roanoke, Virginia and doing business or having done business in Tennessee that was the subject of various assessments by the Defendant.

10.     Plaintiff Pay Car Mining, Inc. ("Pay Car") is a West Virginia corporation with its principal place of business in Roanoke, Virginia and doing business or having done business in West Virginia that was the subject of various assessments by the Defendant.

11.     Plaintiff Premium Coal Company, Incorporated ("Premium") is a Tennessee corporation with its principal place of business in Roanoke, Virginia and doing business or having done business in Tennessee that was the subject of various assessments by the Defendant.

12.     Plaintiff S and H Mining, Inc. ("S & H") is a Tennessee corporation with its principal place of business in Roanoke, Virginia and doing business or having done business in Tennessee that was the subject of various assessments by the Defendant.

13.     Plaintiff Tams Management, Inc. ("Tams") is a West Virginia corporation with its principal place of business in Roanoke, Virginia and doing business or having done business in West Virginia that was the subject of various assessments by the Defendant.  (The Plaintiffs in

this action other than James C. Justice III are sometimes referred to as the "Justice Mining Entities.")

14.      Defendant, Office of Surface Mining Reclamation And Enforcement ("OSMRE"), is an administrative agency within the United States Department Of The Interior tasked with enforcement of surface mining reclamation and enforcement laws and regulations.

### B.      <u>Jurisdiction And Venue</u>

15.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1346 in that this is a civil action against the United States.

16.      This Court has personal jurisdiction over OSMRE because the Defendant is an agency of the United States.

17.      Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(e)(1) because the Defendant is an agency of the United States and a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, in this District—in particular the mining or related activities of several of the Justice Mining Entities of the companies which are located in this District including, but not limited to, A & G and Chestnut, and Jay Justice individually, in this District were subject to enforcement decisions that are part of the parties' overall settlement agreement this action seeks to enforce.

## II.      <u>FACTUAL ALLEGATIONS</u>

18.      In the months and years leading up to April 2019, the OSMRE assessed various fines, special reclamation fees, penalties, and issued other notices and orders against the Justice Mining Entities.

19.     For what is believed to be the first time ever, the OSMRE also wrongfully

assessed a series of individual assessments against Jay Justice personally, allegedly relating to

activities of the Justice Mining Entities.

20.     By April 2019, OSMRE had asserted fines, penalties and assessments against

each of the Justice Mining Entities and against Jay Justice personally.  (See Exhibit A, partially

redacted chart of underlying fines, penalties and assessments, attached and incorporated here by

reference.)

21.     In an effort to resolve the charges listed in Exhibit A in a manner that would

ensure that the needed mine reclamation work was performed, while keeping the Justice Mining

Entities solvent and actively in business, and while also generating and/or preserving hundreds of

jobs associated with the reclamation work and the other ongoing business of the Justice Mining

Entities, representatives of the parties agreed to hold a meeting in early April, 2019.

22.     On April 8, 2019, Jay Justice and Tom Lusk, COO of the Justice Mining Entities,

met with Michael Castle, the Field Office Director of the Knoxville and Lexington Field Offices

of OSMRE, and Mark Snyder, also with OSMRE, in Knoxville.  The discussions during that

meeting were recounted in later correspondence from counsel for the Justice Mining Entities

(attached as Exhibit B and incorporated by reference), as follows:

> Jay Justice and Tom Lusk met with Mike Castle and Mark Snyder
> without counsel.  They discussed the penalties against the
> companies and the individual penalties against [Jay] Justice.  They
> also discussed the abatement of cited conditions and reclamation
> work.  Mr. Castle emphatically emphasized that he is focused on
> completing the field work.  Mr. Castle then explained that, because
> there is no ongoing operation and the companies are not obtaining
> any financial benefit through non-compliance, he believes he has
> the authority to compromise the penalty assessments.  [Jay] Justice
> then proposed that the companies work to complete the
> reclamation work in lieu of the penalty assessments and that the
> penalty assessments be reduced by the cost of the reclamation

work.  If the total penalties are not reduced below $250,000.00
[two hundred fifty thousand dollars] by the cost of the reclamation
work, [Jay] Justice proposed that the companies pay $250,000.00
[two hundred fifty thousand dollars] over twelve months to satisfy
the remaining penalty assessments.  This meeting concluded with
[Jay] Justice agreeing to pay the AML and special reclamation fees
over twelve months.

(Exhibit B, p. 1.)

Mr. Castle and Jay Justice both agreed to the foregoing terms.

23.     After lunch on the same day, the four initial conferees were joined by their

respective attorneys.  The following discussions were held in the presence of attorneys:

Mr. Castle indicated that the OSM wanted the penalties to be
reduced by the cost of the reclamation on a dollar for dollar basis.
You [John Austin, Field Solicitor in the Knoxville Field Office of
the Department of the Interior] mentioned during this meeting that
you [Mr. Austin] would like to have some form of collateral, or
some type of guarantee, that the companies would satisfy their
obligations under any agreement.  We [the Justice Mining Entities]
agreed to provide you with the financial documents upon your
request.

(Exhibit B, p. 2.)

24.     Jay Justice and Mr. Lusk met again with Mr. Castle and Mr. Snyder after the

meeting with their respective attorneys, and discussed as follows:

[Jay] Justice and Mr. Castle discussed whether collateral would
ultimately be necessary. Mr. Castle indicated that he would discuss
this issue with [Mr. Austin] and that he did not believe collateral
would be required to resolve the matter.  During this meeting, it
was agreed that Mr. Lusk would work with Mr. Snyder to
prioritize the work in the field.  [Jay] Justice agreed that he would
place equipment in the field by May 1, 2019 to complete the work
and he met this deadline.  He also agreed to complete the work by
October 31, 2019 weather permitting.

(Exhibit B, p. 2.)

Mr. Castle and Jay Justice again both agreed to the foregoing terms.

25.     OSMRE consistently and clearly held out Mr. Castle as the agency's agent and representative for purposes of negotiating a settlement of the parties' disputes regarding payment of the assessments and fines levied against the Justice Mining Entities.  Mr. Castle, in turn, consistently and clearly maintained that he, not the attorneys for OSMRE or the Department of the Interior, was empowered to negotiate agreements such as the one referenced above and in the attached correspondence.

26.     Mr. Castle's predecessor, Earl Bandy (retired) was also always held out by OSMRE to be the authoritative and binding voice of OSMRE as it related to that agency's oversight of the Justice Mining Entities.  Mr. Castle's position has always been held out as one having actual authority when it comes to the Justice Mining Entities' dealings with OSMRE.

27.     Mr. Castle also expressed to Jay Justice that Mr. Castle's supervisor, Thomas Shope, Regional Manager of the Appalachian Region of OSMRE, approved the parties' agreement.  The Appalachian Region of OSMRE encompasses all the states where the Plaintiffs had operations that are the subject of the parties' agreement.

28.     Mr. Austin merely suggested alternative or supplemental terms to the parties.  Mr. Austin's suggestions or requests were not held out by OSMRE or Mr. Castle to be essential to the parties' final agreement.  Mr. Castle instead told Jay Justice not to worry about Mr. Austin's requests for information or collateral.

29.     Jay Justice and the Justice Mining Entities left the three meetings held on April 8, 2019 believing an agreement had been reached as to all material terms.  Mr. Lusk thereafter spent time in the field on April 15 – 18, 2019 with Mr. Snyder and agreed on the reclamation work that would be completed and a timeframe.

30.     Counsel for the Justice Mining Entities wrote Mr. Austin on April 26, 2019 and invited him to request any additional financial information necessary to effectuate the parties' agreement.  Following that correspondence, Mr. Austin went two weeks without requesting any financial information or requesting collateral in any form or amount.

31.     In the meantime, and in reliance upon the terms of the parties' agreement reached April 8, 2019 (the "Settlement Agreement"), the Justice Mining Entities had already begun to incur significant expense in mobilizing equipment and commencing the reclamation work OSMRE had requested.  Before the end of April 2019, the Plaintiff's had already commenced their performance under the Settlement Agreement, and have continued performing in accordance with that Agreement to this day.

32.     Between April 8, 2019 and early May, 2019, Mr. Castle and Mr. Shope, among others with OSMRE, were copied on emails and correspondence between counsel for the parties discussing the implantation of the parties' Settlement Agreement, and at no time did any officers or representatives of OSMRE express any reservations about the finality and enforceability of the Settlement Agreement.

33.     In the week of May 6, 2019, the government's attitude toward the Justice Mining Entities noticeably soured.  The Mine Health and Safety Administration ("MSHA"), even though it was party to a tolling agreement with the Justice Mining Entities, brought suit against some of those entities in apparent violation of the tolling agreement, early in the week of May 6, 2019.

34.     This event led to Mr. Austin contacting counsel for the Justice Mining Entities to relay his assumption that the filing of the MSHA suit meant that the Justice Mining Entities would be unable to perform their duties under the Settlement Agreement.  When told that his assumption was totally unfounded and that the Justice Mining Entities still intended to abide by

the Settlement Agreement, Mr. Austin suddenly renewed his requests for collateral and financial information.

35. On or about May 12, 2019, less than one business day after the foregoing request, the Justice Mining Entities agreed to provide the requested collateral and financial information, even though they did not believe it was a prerequisite to OSMRE's performance under the terms of the Settlement Agreement.

36. On May 15, 2019, Mr. Austin wrote counsel for the Justice Mining Entities and denied the existence of any agreement to abate or otherwise reduce the fines and assessments reference in Exhibit A—a complete and unforeseeable reversal of the OSMRE's position. Instead, Mr. Austin claimed, for the very first time in the parties' discussions, that Mr. Castle had never had authority to bind OMSRE to the terms of the Settlement Agreement. (See Exhibit C, attached and incorporated here by reference.) Instead of abiding by the Settlement Agreement, Mr. Austin announced he was proceeding to instruct the Department of Justice to sue to collect the fines and assessments referenced in Exhibit A.

37. By virtue of the May 13, 2019 letter from Mr. Austin, OSMRE has entirely reneged on the Settlement Agreement. This, despite the fact that OSMRE held out Mr. Castle as having apparent and actual authority, despite the fact that the Justice Mining Entities relied to their detriment on the position adopted by Mr. Castle that there was a binding Settlement Agreement, and despite the Justice Mining Entities' partial and continuing performance of their duties and responsibilities pursuant to the Settlement Agreement, which without a doubt had to be politically driven.

38. As the Plaintiffs previously made OMSRE and its attorneys aware, preceding litigiously instead of in accordance with the Settlement Agreement harms the operations of a

dozen or so mining companies, and risks the jobs of hundreds of workers on the pending reclamation projects.

39.     The abrupt turnaround by the government in its attitude toward this matter is inexplicable and raises the question whether untoward political or other pressure from sources presently unknown has been brought to bear on OMSRE, perhaps from other federal agencies or political adversaries of the Justice family.  The repudiation of the Settlement Agreement may have resulted from inappropriate inter-agency influence between MSHA and OSMRE. Discovery will be necessary to establish why OMSRE so rapidly changed its position.

40.     In any event, OMSRE's conduct in reneging on the Settlement Agreement creates a legitimate dispute and justiciable controversy that requires the intervention of the Court to resolve.

## COUNT I
## (Declaratory Judgment)

41.     Plaintiffs repeat and reallege each and every allegation set forth in the preceding Paragraphs of this Complaint as if fully set forth herein.

42.     A real and justiciable controversy exists between the Plaintiffs and the Defendant regarding whether those parties entered into an enforceable Settlement Agreement.

43.     Because OSMRE has stated that it intends to disregard the parties' Settlement Agreement and initiate litigation against the Plaintiffs on the underlying assessments, fees and penalties that are the subject of the Settlement Agreement, there also exists an immediacy to the need for an adjudication and declaratory judgment regarding the enforceability of the Settlement Agreement.

44.     If OSMRE is permitted to litigate and otherwise pursue the underlying assessments, fees and penalties without there first being an adjudication and declaratory

judgment regarding the enforceability of the Settlement Agreement, the Plaintiffs will suffer economic and other real damages. Any suit filed by the government in contravention of the Settlement Agreement would create a false impression and arguably be defamatory in that it would cause harm to the business and personal reputations of the Plaintiffs.

45.     The Plaintiffs are therefore entitled to a declaratory judgment pursuant to 28 U.S.C. 2201 that the Settlement Agreement is valid and enforceable against OSMRE and that OSMRE should take no further steps regarding the underlying assessments, fees and penalties.

WHEREFORE, the Plaintiffs respectfully request Judgment on their Complaint herein as follows:

A.     A Judgment on Count I for a declaratory judgment as outlined herein;

B.     Trial by jury on all counts so triable; and

C.     Such further relief as Plaintiffs appear entitled, in addition to the costs and disbursements of this action.

Respectfully submitted,

/s/ Aaron B. Houchens
AARON B. HOUCHENS (VSB #80489)

AARON B. HOUCHENS, P.C.
111 East Main Street
P.O. Box 1250
Salem, Virginia 24153
Telephone: (540) 389-4498
Facsimile: (540) 339-3903
aaron@houchenslaw.com

And

RICHARD A. GETTY
(*Pro Hac Vice* Admission pending)
C. THOMAS EZZELL
(*Pro Hac Vice* Admission pending)
    and
MARCEL RADOMILE
(*Pro Hac Vice* Admission pending)

THE GETTY LAW GROUP, PLLC
1900 Lexington Financial Center
250 West Main Street
Lexington, Kentucky 40507
Telephone: (859) 259-1900
Facsimile:  (859) 259-1909
Email: rgetty@gettylawgroup.com
Email: tezzell@gettylawgroup.com
Email: mradomile@gettylawgroup.com

COUNSEL FOR PLAINTIFFS

ctepld0571

12

Case: 7:19-cv-00354-GFVT Doc #: 3-1 Filed: 06/28/19 Page: 12 of 26 - Page ID#: 113
Case 7:19-cv-00354-GFVT Document 3-1 Filed 06/28/19 Page 13 of 26 PageID# 238

# EXHIBIT A

| SubSystem ID | Permit Number | State | Entity Number | YR | QRT | Company Name | First Bill Date |
|---|---|---|---|---|---|---|---|
| | | | | | | **Justice Companies** | |
| | | | | | | **Outstanding Debt Cases as of 3/15/2019** | |
| O-2018400997 | 1101953 | VA | 119030 | 2018 | 4 | A & G COAL CORP | 2/28/2019 |
| C-C18130157001 | 1102042 | VA | 119030 | | | A & G COAL CORP | 6/30/2018 |
| O-2018300059 | S-4013-01 | WV | 095019 | 2018 | 3 | BLUESTONE COAL CORP | 2/28/2019 |
| O-2018400058 | S-4013-01 | WV | 095019 | 2018 | 4 | BLUESTONE COAL CORP | 2/15/2019 |
| O-2017400463 | S-4013-01 | WV | 095019 | 2017 | 4 | BLUESTONE COAL CORP | 2/28/2018 |
| O-2018100061 | S-4013-01 | WV | 095019 | 2018 | 1 | BLUESTONE COAL CORP | 5/15/2018 |
| O-2018200060 | S-4013-01 | WV | 095019 | 2018 | 2 | BLUESTONE COAL CORP | 8/15/2018 |
| O-2017200370 | 1102079 | VA | 251818 | 2017 | 2 | CHESTNUT LAND HOLDINGS LLC | 8/15/2017 |
| O-2017300361 | 1102079 | VA | 251818 | 2017 | 3 | CHESTNUT LAND HOLDINGS LLC | 11/15/2017 |
| O-2017400343 | 1102079 | VA | 251818 | 2017 | 4 | CHESTNUT LAND HOLDINGS LLC | 2/15/2018 |
| O-2018100339 | 1102079 | VA | 251818 | 2018 | 1 | CHESTNUT LAND HOLDINGS LLC | 5/15/2018 |
| A-20170241098 | | VA | 251818 | 2018 | 1 | CHESTNUT LAND HOLDINGS LLC | 4/30/2018 |
| O-2016400251 | S-4020-96 | WV | 155098 | 2016 | 4 | DYNAMIC ENERGY INC | 2/15/2017 |
| O-2017200233 | S-4020-96 | WV | 155098 | 2017 | 2 | DYNAMIC ENERGY INC | 8/15/2017 |
| O-2017300226 | S-4020-96 | WV | 155098 | 2017 | 3 | DYNAMIC ENERGY INC | 11/15/2017 |
| A-20160241095 | | WV | 155098 | 2016 | 4 | DYNAMIC ENERGY INC | 3/31/2017 |
| O-2018300265 | U-4001-07 | WV | 246980 | 2018 | 3 | FRONTIER COAL CO | 2/28/2019 |
| O-2018400259 | U-4001-07 | WV | 246980 | 2018 | 4 | FRONTIER COAL CO | 2/15/2019 |
| O-2017200297 | U-4001-07 | WV | 246980 | 2017 | 2 | FRONTIER COAL CO | 8/15/2017 |
| O-2017400276 | U-4001-07 | WV | 246980 | 2017 | 4 | FRONTIER COAL CO | 2/15/2018 |
| O-2018100271 | U-4001-07 | WV | 246980 | 2018 | 1 | FRONTIER COAL CO | 5/15/2018 |
| O-2018200270 | U-4001-07 | WV | 246980 | 2018 | 2 | FRONTIER COAL CO | 8/15/2018 |
| C-I18090000009 | 3241 | TN | 150367 | | | JAMES JUSTICE III | 2/15/2019 |
| C-I18090000013 | 3143 | TN | 150367 | | | JAMES JUSTICE III | 3/15/2019 |
| C-I18090000014 | 3143 | TN | 150367 | | | JAMES JUSTICE III | 3/15/2019 |
| C-I18090000017 | TN-023 | TN | 150367 | | | JAMES JUSTICE III | 3/15/2019 |
| C-I18090000006 | 2872 | TN | 150367 | | | JAMES JUSTICE III | 10/31/2018 |
| C-I18090000007 | 3233 | TN | 150367 | | | JAMES JUSTICE III | 10/31/2018 |
| C-I18090000008 | 3233 | TN | 150367 | | | JAMES JUSTICE III | 10/31/2018 |
| C-I18090000010 | 3250 | TN | 150367 | | | JAMES JUSTICE III | 1/15/2019 |
| C-I18090000011 | 3250 | TN | 150367 | | | JAMES JUSTICE III | 1/15/2019 |
| C-I18090000012 | 3250 | TN | 150367 | | | JAMES JUSTICE III | 1/15/2019 |
| C-I18090000018 | 3237 | TN | 150367 | | | JAMES JUSTICE III | 3/15/2019 |
| O-2018300206 | S-72-82 | WV | 155032 | 2018 | 3 | JUSTICE ENERGY CO INC | 2/28/2019 |
| O-2018400202 | S-72-82 | WV | 155032 | 2018 | 4 | JUSTICE ENERGY CO INC | 2/15/2019 |
| O-2018200997 | S-72-82 | WV | 155032 | 2018 | 2 | JUSTICE ENERGY CO INC | 8/15/2018 |
| A-20160241098 | | WV | 155032 | 2017 | 1 | JUSTICE ENERGY CO INC | 4/15/2017 |
| O-2018300228 | 898-0882 | KY | 156503 | 2018 | 3 | KENTUCKY FUEL CORP | 2/15/2019 |
| O-2018300228 | 898-0883 | KY | 156503 | 2018 | 3 | KENTUCKY FUEL CORP | 2/15/2019 |
| O-2018400223 | 898-0883 | KY | 156503 | 2018 | 4 | KENTUCKY FUEL CORP | 2/28/2019 |
| O-2018400223 | 860-0505 | KY | 156503 | 2018 | 4 | KENTUCKY FUEL CORP | 2/28/2019 |
| O-2018400223 | 898-0882 | KY | 156503 | 2018 | 4 | KENTUCKY FUEL CORP | 2/28/2019 |
| O-2017300248 | 898-0775 | KY | 156503 | 2017 | 3 | KENTUCKY FUEL CORP | 11/15/2017 |

| O-2017400239 | 898-0775 | KY | 156503 | 2017 | 4 | KENTUCKY FUEL CORP | 2/15/2018 |
|---|---|---|---|---|---|---|---|
| O-2018100234 | 898-0775 | KY | 156503 | 2018 | 1 | KENTUCKY FUEL CORP | 5/15/2018 |
| O-2018200233 | 898-0775 | KY | 156503 | 2018 | 2 | KENTUCKY FUEL CORP | 8/15/2018 |
| A-20170241076 | | KY | 156503 | 2018 | 1 | KENTUCKY FUEL CORP | 5/15/2018 |
| A-20170245076 | | WV | 156503 | 2018 | 1 | KENTUCKY FUEL CORP | 5/15/2018 |
| C-C18090171003 | TN-023 | TN | 251162 | | | NATIONAL COAL LLC | 9/30/2018 |
| C-C18090171004 | 3250 | TN | 251162 | | | NATIONAL COAL LLC | 9/30/2018 |
| C-C18090281003 | TN-020 | TN | 251162 | | | NATIONAL COAL LLC | 8/31/2018 |
| C-C18090461002 | 3255 | TN | 251162 | | | NATIONAL COAL LLC | 9/30/2018 |
| C-C18090461003 | 3256 | TN | 251162 | | | NATIONAL COAL LLC | 10/15/2018 |
| C-C18090535001 | 3249 | TN | 251162 | | | NATIONAL COAL LLC | 7/15/2018 |
| C-C18090535002 | 3249 | TN | 251162 | | | NATIONAL COAL LLC | 9/30/2018 |
| C-C18090535003 | 3249 | TN | 251162 | | | NATIONAL COAL LLC | 11/15/2018 |
| C-C18090560002 | TN-021 | TN | 251162 | | | NATIONAL COAL LLC | 6/30/2018 |
| C-C18090560004 | TN-021 | TN | 251162 | | | NATIONAL COAL LLC | 10/15/2018 |
| C-N17090461002 | 3255 | TN | 251162 | | | NATIONAL COAL LLC | 11/30/2017 |
| C-N18090171003 | TN-023 | TN | 251162 | | | NATIONAL COAL LLC | 8/31/2018 |
| C-N18090171004 | 3250 | TN | 251162 | | | NATIONAL COAL LLC | 8/31/2018 |
| C-N18090281003 | TN-020 | TN | 251162 | | | NATIONAL COAL LLC | 6/30/2018 |
| C-N18090461005 | 3256 | TN | 251162 | | | NATIONAL COAL LLC | 8/31/2018 |
| C-N18090535001 | 3249 | TN | 251162 | | | NATIONAL COAL LLC | 7/15/2018 |
| C-N18090535006 | 3249 | TN | 251162 | | | NATIONAL COAL LLC | 10/15/2018 |
| C-N18090560002 | TN-021 | TN | 251162 | | | NATIONAL COAL LLC | 6/15/2018 |
| C-N18090560004 | TN-021 | TN | 251162 | | | NATIONAL COAL LLC | 7/15/2018 |
| C-N18090560007 | TN-021 | TN | 251162 | | | NATIONAL COAL LLC | 11/15/2018 |
| C-N18090535008 | 3249 | TN | 251162 | | | NATIONAL COAL LLC | |
| O-2018300243 | U-4010-98 | WV | 158356 | 2018 | 3 | PAY CAR MINING INC | 2/28/2019 |
| O-2018400238 | U-4010-98 | WV | 158356 | 2018 | 4 | PAY CAR MINING INC | 2/15/2019 |
| O-2017300263 | U-4010-98 | WV | 158356 | 2017 | 3 | PAY CAR MINING INC | 11/15/2017 |
| O-2017400254 | U-4010-98 | WV | 158356 | 2017 | 4 | PAY CAR MINING INC | 2/15/2018 |
| O-2018100249 | U-4010-98 | WV | 158356 | 2018 | 1 | PAY CAR MINING INC | 5/15/2018 |
| O-2018200248 | U-4010-98 | WV | 158356 | 2018 | 2 | PAY CAR MINING INC | 8/15/2018 |
| C-N18090546004 | 3237 | TN | 036315 | | | PREMIUM COAL CO INC | 2/15/2019 |
| C-N18090560008 | 3236 | TN | 036315 | | | PREMIUM COAL CO INC | 2/15/2019 |
| C-C17090534001 | 3183 | TN | 036315 | | | PREMIUM COAL CO INC | 9/30/2018 |
| C-C17090546001 | 3237 | TN | 036315 | | | PREMIUM COAL CO INC | 4/15/2019 |
| C-C18090171001 | 3233 | TN | 036315 | | | PREMIUM COAL CO INC | 6/30/2018 |
| C-C18090171002 | 3241 | TN | 036315 | | | PREMIUM COAL CO INC | 7/15/2018 |
| C-C18090281001 | 3143 | TN | 036315 | | | PREMIUM COAL CO INC | 8/31/2018 |
| C-C18090281002 | 2872 | TN | 036315 | | | PREMIUM COAL CO INC | 8/31/2018 |
| C-C18090534001 | 3183 | TN | 036315 | | | PREMIUM COAL CO INC | 9/30/2018 |
| C-C18090534003 | 3183 | TN | 036315 | | | PREMIUM COAL CO INC | 11/30/2018 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| C-C18090546001 | 3237 | TN | 036315 | | | PREMIUM COAL CO INC | 9/30/2018 |
| C-C18090560001 | 3236 | TN | 036315 | | | PREMIUM COAL CO INC | 6/30/2018 |
| C-C18090560003 | 3240 | TN | 036315 | | | PREMIUM COAL CO INC | 9/30/2018 |
| C-N17090534001 | 2873 | TN | 036315 | | | PREMIUM COAL CO INC | 11/15/2017 |
| C-N17090534005 | 3183 | TN | 036315 | | | PREMIUM COAL CO INC | 9/30/2018 |
| C-N17090546004 | 3237 | TN | 036315 | | | PREMIUM COAL CO INC | 4/15/2018 |
| C-N18090171001 | 3233 | TN | 036315 | | | PREMIUM COAL CO INC | 6/30/2018 |
| C-N18090171002 | 3241 | TN | 036315 | | | PREMIUM COAL CO INC | 6/30/2018 |
| C-N18090281001 | 3143 | TN | 036315 | | | PREMIUM COAL CO INC | 8/15/2018 |
| C-N18090281002 | 2872 | TN | 036315 | | | PREMIUM COAL CO INC | 6/30/2018 |
| C-N18090534004 | 3183 | TN | 036315 | | | PREMIUM COAL CO INC | 7/15/2018 |
| C-N18090534005 | 3183 | TN | 036315 | | | PREMIUM COAL CO INC | 8/15/2018 |
| C-N18090534008 | 3138 | TN | 036315 | | | PREMIUM COAL CO INC | 10/31/2018 |
| C-N18090546002 | 3237 | TN | 036315 | | | PREMIUM COAL CO INC | 6/30/2018 |
| C-N18090546003 | 3237 | TN | 036315 | | | PREMIUM COAL CO INC | 8/15/2018 |
| C-N18090560001 | 3236 | TN | 036315 | | | PREMIUM COAL CO INC | 6/15/2018 |
| C-N18090560003 | 3236 | TN | 036315 | | | PREMIUM COAL CO INC | 7/15/2018 |
| C-N18090560005 | 3240 | TN | 036315 | | | PREMIUM COAL CO INC | 7/15/2018 |
| C-N19090546001 | 3237 | TN | 036315 | | | PREMIUM COAL CO INC | |
| C-C18090534002 | 3046 | TN | 039561 | | | S & H MINING INC | 11/30/2018 |
| C-N17090534004 | 2283066 | TN | 039561 | | | S & H MINING INC | 2/28/2018 |
| C-N18090534007 | 3046 | TN | 039561 | | | S & H MINING INC | 10/31/2018 |
| O-2017200338 | S-5013-00 | WV | 250162 | 2017 | 2 | TAMS MANAGEMENT INC | 8/15/2017 |
| O-2017200338 | S-3009-98 | WV | 250162 | 2017 | 2 | TAMS MANAGEMENT INC | 8/15/2017 |
| O-2017200338 | S-3018-09 | WV | 250162 | 2017 | 2 | TAMS MANAGEMENT INC | 8/15/2017 |
| O-2017300331 | S-3009-98 | WV | 250162 | 2017 | 3 | TAMS MANAGEMENT INC | 11/15/2017 |
| O-2017300331 | S-4013-01 | WV | 250162 | 2017 | 3 | TAMS MANAGEMENT INC | 11/15/2017 |
| O-2017400316 | S-3009-98 | WV | 250162 | 2017 | 4 | TAMS MANAGEMENT INC | 2/15/2018 |
| A-20170241077 | | WV | 250162 | 2018 | 2 | TAMS MANAGEMENT INC | 7/31/2018 |

# EXHIBIT B

# CAREY, SCOTT, DOUGLAS & KESSLER, PLLC

901 CHASE TOWER
707 VIRGINIA STREET, EAST
P. O. BOX 913
CHARLESTON, WV 25323

MICHAEL W. CAREY
ROBERT E. DOUGLAS
JOHN A. KESSLER
S. BENJAMIN BRYANT
DAVID R. POGUE

TELEPHONE (304) 345-1234
TELEPHONE (304) 342-1111
FACSIMILE (304) 342-1105

May 13, 2019

John Austin, Esquire
United States Department of the Interior –
Office of the Solicitor
800 S. Gay Street, Suite 800
Knoxville, TN 37929

        Re:    Justice Companies
                Outstanding OSM Assessments

Dear Mr. Austin:

      I am writing to follow up on our conversation from Friday May 10, 2019 and to confirm our agreement to all material terms of a settlement of outstanding OSM liabilities as set forth in my letter of April 26, 2019. This agreement follows meetings which occurred on April 8, 2019 in Knoxville. Prior to our meeting, Jay Justice and Tom Lusk met with Mike Castle and Mark Snyder without counsel. They discussed the penalties against the companies and the individual penalties against Mr. Justice. They also discussed the abatement of cited conditions and reclamation work. Mr. Castle emphatically emphasized that he is focused on completing the field work. Mr. Castle then explained that, because there is no ongoing operation and the companies are not obtaining any financial benefit through non-compliance, he believes he has the authority to compromise the penalty assessments. Mr. Justice then proposed that the companies work to complete the reclamation work in lieu of the penalty assessments and that the penalty assessments be reduced by the cost of the reclamation work. If the total penalties are not reduced below $250,000.00 by the cost of the reclamation work, Mr. Justice proposed that the companies pay $250,000.00 over twelve months to satisfy the remaining penalty assessments. This meeting concluded with Mr. Justice agreeing to pay the AML and special reclamation fees over twelve months. Mr. Castle then indicated he would discuss this proposal with you and Mr. Henson and we would reconvene after lunch.

      After lunch, we met with our respective clients present and I conveyed to you the offer that was memorialized in writing on April 26, 2019. During this meeting, Mr. Castle indicated that the OSM wanted the penalties to be reduced by the cost of the reclamation on a dollar for dollar basis. You mentioned during this meeting that you would like to have some form of collateral, or some type of guarantee, that the companies would satisfy their obligations under any agreement. We agreed to provide you with the financial documents upon your request.

After our meeting concluded, Mr. Justice and Mr. Lusk met again with Mr. Castle and Mr. Snyder. I understand that Mr. Justice and Mr. Castle discussed whether collateral would ultimately be necessary. Mr. Castle indicated that he would discuss this issue with you and that he did not believe collateral would be required to resolve the matter. During this meeting, it was agreed that Mr. Lusk would work with Mr. Snyder to prioritize the work in the field. Mr. Justice agreed that he would place equipment in the field by May 1, 2019 to complete the work and he met this deadline. He also agreed to complete the work by October 31, 2019 weather permitting. At this point, my clients believed an agreement had been reached as to all material terms. Mr. Lusk thereafter spent time in the field on April 15-18, 2019 with Mr. Snyder and they agreed on the work that would be completed and a timeframe. My letter of April 26, 2019 followed and concluded by inviting you to request any additional information necessary.

Following my April 26, 2019, correspondence, you never requested any specific financial information and never requested collateral in any specific form or any specific amount. We next discussed this matter on May 10, 2019, at which time I asked what was necessary to finalize the agreement. In response, you said that the companies must provide financial statements and collateral to secure payment of the penalty assessments (or reclamation with costs up to the amount of the penalty assessments). The timing of this request is surprising considering my April 26, 2019 correspondence offered to provide additional information upon request. We did not hear anything from you in this regard until May 10, 2019. Now it is our understanding that the Department of Justice is involved and is preparing litigation against the companies and individuals. The timing of the involvement of the Department of Justice in this matter is likely no coincidence considering the action filed last week to collect allegedly delinquent mine safety and health assessments. This is particularly surprising considering that my clients left Knoxville on April 8 with an agreement as to all material terms and Mr. Castle and Mr. Snyder were satisfied with both the terms and the plans for the work in the field after Mr. Snyder's meeting with Mr. Lusk.

After you stated on May 10, 2019 that financial statements and collateral would be required, we worked through the weekend to meet these requests and now specifically agree to provide financial statements and collateral to secure the payment of the cost of reclamation up to the amount of the penalty assessments. The companies have recently obtained a verbal commitment from a lender that will allow the companies to provide a letter of credit in the amount of the outstanding penalties. This letter of credit will be used to secure payment of the penalty assessments (or reclamation with costs up to the amount of the penalty assessments) and will secure the payment of the $250,000.00 penalty if the penalty assessments are not reduced to less than $250,000.00 by the reclamation cost. We can immediately move forward with the letter of credit as soon as we have an executed agreement we can share with our lender. Additionally, I will need you to provide me all of the counterpart information from OSM so that it can be listed on the letter of credit. If still necessary, we will provide you with the most recent financial statements for the companies which the OSM contends owe penalty assessments.

The Justice family appreciates Mr. Castle's willingness to meet and work through these issues and his professionalism throughout this process. We believe this agreement will accomplish the primary goal of ensuring that the conditions on the ground comply with the law. As previously

mentioned, this agreement will allow the companies to complete the reclamation while at the same time continuing to operate and saving approximately 450 jobs.

I understand from discussions with your office last week that the filing of one or more complaints is imminent. This is of grave concern and bewilderment to my clients. We believe it is unnecessary, as we have now met every term you requested to settle this matter. If this file has been forwarded to the Department of Justice, I request that this correspondence be immediately provided to the individuals working on this matter and that they be notified we have agreed to all of the OSM's settlement demands. Additionally, please immediately provide me with their names and contact information.

Sincerely,

/s/ Michael W. Carey

Michael W. Carey

cc:     Mike Castle
        John Henson, Esquire
        Tom Lusk
        James C. Justice, III

# EXHIBIT C



**United States Department of the Interior**

OFFICE OF THE SOLICITOR

Knoxville Field Office
800 S. Gay Street, Suite 800
Knoxville, Tennessee 37929



E-mail: john.austin@sol.doi.gov

Telephone: (865) 545-4955

**May 15, 2019**

Michael W. Carey
Carey, Scott, Douglas & Kessler, PLLC
P. O. BOX 913
Charleston, WV 25323

**sent via email only**

Dear Mr. Carey:

This is in response to your letter dated May 13, 2019, and the emails that you sent as a further explanation of that letter. I acknowledged receipt of your letter by email to Chris Pence on 05-13-19 at 4:26 p.m.

I need to reiterate what you and your clients have been told: Neither OSMRE nor any of its employees nor the attorneys representing the Secretary of the Interior have the authority to settle a debt owed to the United States that exceeds $100,000.00 without the approval of the U.S. Department of Justice (DOJ). *See* 31 U.S.C. § 9711 and 31 C.F.R. § 902.1. Therefore, notwithstanding your clients' assertion about a deal they believe they made with OSMRE, there is not nor has there been an authorized agreement with the United States to settle the monetary debts of your clients for $250,000.00, or for any other amount.

Yesterday afternoon, a letter authorizing DOJ to file suit against the Justice Companies *et al.* on behalf of the Department of the Interior was signed and sent (the end of a process that has taken months to accomplish – the MSHA lawsuit plays no part in DOI's referral to DOJ). If your clients want to settle these cases before suit is filed, please make an offer that we can discuss with DOJ. If you decide to make an offer, we recommend that you provide collateral to guarantee the full performance of any proposed settlement.

In addition, as we explained in our face-to-face meeting in April, in order to settle these claims, we will require financial statements and any other information you can provide that will demonstrate a settlement is in the best interests of the citizens of the United States. We will also need documentation of your belief that a settlement will preserve 450 jobs.

We have suggested on more than one occasion that a showing of good faith will benefit your clients if they intend to pursue settlement. For instance, they can show good faith by continuing to abate the environmental violations that exist in Tennessee and by making good on the settlement agreement negotiated on their behalf in 2017 by Zachary Wright (copy attached).

We look forward to working out a settlement with you, your clients, and DOJ. We are standing by to answer any questions you might have.

Sincerely,

**JOHN AUSTIN**, Field Solicitor

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

James C. Justice III, A & G Coal Corp., Chestnut Land Holdings, LLC; Bluestone Coal Corp., Dynamic Energy, Inc., see attached sheet

**(b)** County of Residence of First Listed Plaintiff    Roanoke City
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Aaron B. Houchens, Aaron B. Houchens, P.C., 111 East Main Street, P.O. Box 1250, Salem, Virginia 24163, (540) 389-4498, see attached sheet

### DEFENDANTS

Office of Surface Mining, Reclamation and Enforcement, United States Department of the Interior

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
     Plaintiff

☐ 3   Federal Question
     *(U.S. Government Not a Party)*

☒ 2   U.S. Government
     Defendant

☐ 4   Diversity
     *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☒ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original Proceeding    ☐ 2   Removed from State Court    ☐ 3   Remanded from Appellate Court    ☐ 4   Reinstated or Reopened    ☐ 5   Transferred from Another District *(specify)*    ☐ 6   Multidistrict Litigation - Transfer    ☐ 8   Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1346, 2201
Brief description of cause:
Declaratory Judgment to enforce Settlement Agreement

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE   N/A     DOCKET NUMBER

DATE
05/17/2019

SIGNATURE OF ATTORNEY OF RECORD
/s/ Aaron B. Houchens, Esq.

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

## Continuation of Civil Cover Sheet, 1. (a) Plaintiffs

James C. Justice III, A&G Coal Corporation., Chestnut Land Holdings LLC,

Bluestone Coal Corp., Dynamic Energy, Inc., Frontier Coal Company., Justice Energy Co., Inc.,

Kentucky Fuel Corporation, National Coal, LLC, Pay Car Mining, Inc., Premium Coal

Company., Inc., S & H Mining, Inc., and TAMS Management, Inc.

## Continuation of Civil Cover Sheet, 1. (c) Attorneys

AARON B. HOUCHENS
AARON B. HOUCHENS, P.C.
111 East Main Street
P.O. Box 1250
Salem, Virginia  24153
Telephone:  (540) 389-4498
Facsimile:  (540) 339-3903
Email: aaron@houchenslaw.com

and

RICHARD A. GETTY (*Pro Hac Vice* Admission pending)
C. THOMAS EZZELL (*Pro Hac Vice* Admission pending)
MARCEL RADOMILE (*Pro Hac Vice* Admission pending)
THE GETTY LAW GROUP, PLLC
1900 Lexington Financial Center
250 West Main Street
Lexington, Kentucky 40507
Telephone: (859) 259-1900
Email: rgetty@gettylawgroup.com
Email: tezzell@gettylawgroup.com
Email: mradomile@gettylawgroup.com