IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| SOUTHERN COAL CORPORATION; | ) |
| A&G COAL CORPORATION; | ) |
| JUSTICE COAL OF ALABAMA, LLC; | ) |
| BLACK RIVER COAL, LLC; | ) |
| CHESTNUT LAND HOLDINGS LLC; | ) |
| DOUBLE BONUS COAL COMPANY; | ) |
| DYNAMIC ENERGY, INC; FOUR | )   Case No.   7:19-cv-354 |
| STAR RESOURCES, LLC; FRONTIER | )   Senior Judge Glen E. Conrad |
| COAL COMPANY, INC; INFINITY | ) |
| ENERGY, INC; JUSTICE ENERGY | ) |
| COMPANY, INC; JUSTICE | ) |
| HIGWALL MINING, INC; | ) |
| KENTUCKY FUEL CORP.; | ) |
| KEYSTONE SERVICES INDUSTRIES, | ) |
| INC.; M&P SERVICES, INC.; NINE | ) |
| MILE MINING COMPANY, INC.; | ) |
| NUFAC MINING COMPANY, INC.; | ) |
| PAY CAR MINING, INC.; PREMIUM | ) |
| COAL COMPANY, INC.; S AND H | ) |
| MINING, INC.; SEQUOIA ENERGY, | ) |
| LLC; TAMS MANAGEMENT, INC.; | ) |
| VIRGINIA FUEL CORP., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

Defendants Double Bonus Coal Company, Dynamic Energy, Inc., Frontier Coal Company, Justice Energy Company, Inc., Justice Highwall Mining, Inc., Keystone Services Industries, Inc., M&P Services, Inc., Nufac Mining Company, Inc, and Pay Car Mining Company, Inc., (collectively, "Movants") state the following as a Reply in Support of Their Motion to Dismiss:

1

**I.     Introduction**

In its Response to Defendants' Motion to Dismiss, the Plaintiff asserts that the Movants and their attorneys have misled the Court through factual assertions made in their Memorandum of Law in support of the Motion to Dismiss. This is simply false. The only Defendant entities that moved to dismiss the Complaint are those entities which are subsidiaries of Bluestone Resources, Inc. All other Defendants answered the Complaint. When Vice-President and General Counsel Steve Ball testified in a deposition on March 14, 2019 regarding the business activities that took place in Roanoke, Virginia, that testimony was absolutely true. It is also true that, as of March 14, 2019, Bluestone Resources, Inc. was in the midst of a corporate reorganization with the intent to relocate certain functions of the Bluestone Resources, Inc.'s subsidiaries to Daniels, West Virginia. Likewise, every single assertion in Mr. Lusk's affidavit regarding the business activities of the Bluestone Resources, Inc. subsidiaries is absolutely true- dooming the Plaintiff's arguments to the contrary.

Unlike Mr. Lusk's Affidavit, the Declaration of Thomas Charboneau, which was attached to the Plaintiff's Complaint, contains many material misrepresentations regarding outstanding assessments. Before an assessment can be properly included in any collection action before this Court, it must be a final order of the Federal Mine Safety and Health Review Commission ("Commission"). *See* 30 U.S.C. §§ 815(a) and (d) and 30 U.S.C. § 820(j). The charts included with Mr. Charboneau's Declaration include as "final orders" cases which are currently pending before the Commission. For instance, Mr. Charboneau declares that Assessment Case Numbers 000484392 and 000486293 are "final orders" of the Commission and are included within the assessments that the United States seeks to collect in this action. However, case number 000484392 has been assigned Docket No. WEVA 2019-0355 and case number 000486293 has

been assigned Docket No. WEVA 2019-0434. The Petition for Assessment of Civil Penalty in Docket No. WEVA 2019-0355, which is the document which commences the administrative proceeding, was filed May 14, 2019 and is attached hereto as Exhibit A. The Petition in Docket No. WEVA 2019-0434 was filed May 16, 2019 and is attached hereto as Exhibit B. Both documents were filed after the Complaint in this action and both of these cases are still pending before the Commission. By law, they are not "final orders." There are other cases identified in Mr. Charboneau's Declaration which are likewise not final orders of the Commission. By the Plaintiff's logic, Mr. Charboneau's Declaration could be characterized as false or misleading. Did he intentionally mislead the Court? Is it appropriate for the Movants to characterize Mr. Charboneau's false statements as "stunning?" Or is it possible that Mr. Charboneau made a mistake?

The attorneys which drafted the Complaint in *James C. Justice, III, et. al. v. OSMRE*, No. 7:19cv381 (W.D. Va. May 17, 2019) (OSMRE Complaint), have previously represented companies owned and/or operated by Mr. Justice. *See* Ezzell Affidavit, Exhibit C, at ¶¶ 4-5. At the time the OSMRE Complaint was filed, the attorneys made the assumption, based on previous work, that Dynamic Energy, Inc., Frontier Coal Company, Justice Energy Company, Inc., and Pay Car Mining, Inc. maintained their principal place of business in Roanoke. *Id*. ¶ 6. The attorneys were unaware of the detailed corporate activities of the Bluestone Resources, Inc. at the time the OSMRE Complaint was filed. *Id*. ¶ 7. To be fair, this fact, considering the number of parties and allegations in the Complaint, was not necessarily a material fact, considering that a party, as a Plaintiff, is free to invoke this Court's jurisdiction.[1] Nevertheless, it was an inaccurate statement

---

[1] The amounts owed to OSMRE by the four entities have been paid and those entities are in the process of being removed from the litigation. *See* Ezzell Affidavit, Exhibit C, at ¶ 10.

3

as to the principal place of business of those four entities. A mistake. An inadvertent oversight. It was not the intent to mislead this Court. *See* Ezzell Affidavit, Exhibit C, at ¶ 8.

The Plaintiff alleges in its Complaint that the principal place of business of the Bluestone Resources, Inc. subsidiaries is in West Virginia. Ironically, in its Response, the Plaintiff characterized those exact same allegations when made by the Movants in their Motion to Dismiss as "stunning" and "frivolous." However, on its face, the Plaintiff's Complaint fails to allege a basis for personal jurisdiction against the Movants in the Western District of Virginia. At the time the Complaint was filed, the Plaintiff had access to the consent decree filed in 2016 and to Mr. Ball's testimony yet still alleged that the principal place of business for the Movants was in West Virginia. The Movants have never alleged that they have "no ties" to the Western District of Virginia and the Government's characterization to the contrary is misleading. Rather, the Movants allege that, in weighing the factors a court considers in determining whether personal jurisdiction exists, there is a lack of sufficient minimum contacts for personal jurisdiction to rest with this Court. The principal place of business for these entities is Daniels, West Virginia. This position is entirely consistent with statements the Plaintiff made to this Court in paragraphs 5-28 of its Complaint.

Other than the effort to tarnish the Movants and their counsel before this Court, the Plaintiff's basis for personal jurisdiction rests primarily on the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. U.S.C. § 3001, *et seq*., a statute which does not apply to confer personal jurisdiction in efforts to collect Mine Act debt. Additionally, the fact that a party invokes the court's jurisdiction in one matter is insufficient to confer general personal jurisdiction over that party as a defendant in future unrelated matters. The Government's reliance on the 2016 consent decree is therefore misplaced. Finally, the Movants are not "at home" in Virginia for the Court to

4

exercise general jurisdiction and do not fall within the reach of the Virginia long-arm statute for the Court to exercise specific jurisdiction. As set forth below, the Defendants' should be dismissed from this action because the Court lacks personal jurisdiction.

**II.     Plaintiff's Reliance on the FDCPA's Nationwide Service of Process Provision Is Misplaced Because It Does Not Apply to the Collection of Debt Arising Under the Mine Act.**

In many instances, the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. U.S.C. § 3001, *et seq.*, provides the "exclusive civil procedures" for the United States' debt collection efforts. 28 U.S.C. § 3001(a). Like several other federal laws, including, the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1332, and the Securities Exchange Act, 15 U.S.C. § 78aa, the FDCPA provides for nationwide service of process, stating in relevant part that process "may be served in any state…[.]" 28 U.S.C. § 3004(b).

Although the Supreme Court of the United States has not yet had occasion to consider whether the traditional minimum contacts analysis (state forum) and nationwide service of process authorized by federal statute (national forum) are constitutionally reconcilable, lower federal courts have found that "when the personal jurisdiction of a federal court is invoked based upon a federal statute providing for nationwide service, the relevant inquiry is whether the respondent has had sufficient minimum contacts with the United States." *See e.g., In re Application to Enforce Admin. of Subpoenas of S.E.C. v. Knowles,* 87 F.3d 413, 417 (10th Cir. 1996); *Flynn v. Ohio Bldg. Restoration, Inc.,* 260 F.Supp.2d 156, (D.D.C. 2003) (holding that the nationwide service of process provision of ERISA subjected a defendant lacking minimum contacts with the District of Columbia to personal jurisdiction in the District of Columbia because the defendant had sufficient minimum contacts with the United States).

However, unlike other federal laws which contemplate nationwide service of process and have been interpreted to require only minimum contacts with the United States to exercise personal jurisdiction over a party, Congress placed an important "limitation" on the applicability of the FDCPA's exclusive jurisdiction procedures. See 28 U.S.C. § 3001(b). The FDCPA limitation provides that "[t]o the extent that <u>another federal law specifies procedures for recovering on a claim or a judgment for a debt arising under such law, those procedures **shall** apply to such claim or judgment to the extent those procedures are inconsistent with this chapter</u>." *Id.* (emphasis added). The Supreme Court has advised that Congress' use of the term "shall" in a statute is a command and creates an obligation not subject to judicial discretion. *United States v. Peters,* 783 F.3d 1361, 1364 (11th Cir. 2015) (*quoting Alabama v. Bozeman,* 121 S.Ct. 2079, 2085 (2001)*; Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 118 S.Ct. 956, 962 (1998)).

Accordingly, courts have routinely held that the mandatory "shall" language included in the FDCPA's limitation necessarily renders the FDCPA inapplicable if another federal law directly contemplates how the government's debt collection efforts should proceed and those procedures conflict with the procedures proscribed by the FDCPA. *See e.g., McKean v. U.S.,* 563 F.Supp.2d 182 (D.D.C. 2008) (holding that the plain language of the FDCPA's limitation dictated that the FDCPA did not apply to seizure of taxpayer property where the Federal Tax Code provided the exclusive procedures for the government's collection efforts); *United States v. George,* 144 F.Supp.2d 161 (E.D.N.Y. 2001) (holding that the FDCPA's exclusive civil procedures did not apply to government's collection efforts on Federal student loan debt which was specifically addressed in the Higher Education Act); *United States v. Moore.,* No. 2:17- MC-3809, 2018 WL 1415651 (M.D. Ala. Mar. 1, 2018) (holding that the mandatory "shall" language of the FDCPA required transfer of garnishment proceeding to the district where the defendant resided).

6

Another federal law which specifically contemplates the procedures for government collection of unpaid civil penalties arising under it is the Mine Safety and Health Act of 1977, as amended, 30 U.S.C. § 801, *et seq.*, ("Mine Act"). In pertinent part, the Mine Act provides that "[c]ivil penalties owed under this Act…<u>may be recovered in a civil action in the name of the United States brought in the United States district court for the district where the violation occurred or where the operator has its principal office</u>…[.]" 30 U.S.C. § 820(j) (emphasis added). Thus, the Mine Act contemplates that civil actions brought on behalf of the United States to collect unpaid civil penalties may be brought in two, and only two specifically identified forums: 1) the district where the violations occurred; and 2) where the operator has its principal office. *Id.*

Here, the Mine Act's restrictions on where the Government may initiate a civil action to collect unpaid civil penalties is squarely at odds with the FDCPA's nationwide jurisdiction provision for federal debt collection. Based upon the plain, mandatory language of the FDCPA's "limitation," this conflict must be resolved in favor of the Mine Act's procedures for selecting the appropriate forum to initiate a debt collection action and is "not open to judicial discretion." Thus, this Court cannot exercise personal jurisdiction over the Defendant's based solely upon an inapplicable federal statute which provides for nationwide service of process- instead the focus must be on minimum contacts that establish the basic parameters for jurisdiction.

Thus, the Plaintiff's argument that the Movants have "substantial contacts with the United States" is irrelevant and misrepresents the applicable jurisdictional inquiry. For jurisdiction to rest with this Court through operation of a federal statute, the Mine Act, the Plaintiff must show either that: 1) the violations occurred in this district; or 2) the Defendants maintain their principal office in this district. Here, the Plaintiff has failed to meet its burden in both respects.

7

### A. The Alleged Violations of the Mine Act and the Resulting Civil Penalties Occurred Outside of Virginia.

In its Complaint, the Plaintiff identified the location where each of the Movants' mining activity leading to the assessment of the civil penalties at issue occurred. For every single Movant, the Plaintiff correctly alleged that the mining activity related to the assessed civil penalties occurred outside of Virginia. *See Complaint* ¶ ¶ 11-28. Accordingly, the mining activity of the Movants' fails to create a basis for jurisdiction for the collection of civil penalties in any way. The sworn testimony of Mr. Ball regarding some of the ancillary business functions performed in Roanoke on behalf of the Movants through their parent company, Bluestone Resources, Inc., prior to the Complaint being filed does nothing to change this fact. Moreover, the Mine Act does not contemplate the location of any other non-mining related functions as significant to selecting the appropriate forum. *See* 30 U.S.C. § 820(j). Plaintiff contends in its Response that the Movants' argument that all mining activity occurred outside of Virginia "misses the point" because "this is a debt collection action pursuant to the FDCPA." *See* Pl's Response, p. 14. However, this argument rings hollow because the Mine Act, not the FDCPA, controls the statutory jurisdiction inquiry in this case due to the mandatory limitation discussed above.

### B. The Movants Do Not Maintain Their Principal Office in Virginia.

The principal office for each Movant is in West Virginia as set forth by the sworn affidavit of Mr. Lusk. In arguing that the principal office for the Movants is in Virginia, the Government relies on 1) statements in other litigation and 2) prior testimony of Steve Ball related to Justice Energy. The statements in other litigation have been addressed herein. The testimony of Steve Ball is insufficient to establish jurisdiction at this stage because he primarily discussed accounting and financial functions and in no way contradicted Mr. Lusk's affidavit. Mr. Ball was deposed on March 14, 2019 and Mr. Lusk executed the affidavit on July 9, 2019. In that time, changes were

made to personnel and specifically personnel related to the accounting functions. As explained by Mr. Lusk, Mr. Harrah is the CFO for the parent company of the Movants. Mr. Harrah began work on May 6, 2019. Additionally, the Complaint referenced demand letters sent by the Government to the Movants requesting payment prior to the filing of this action. Complaint at ¶ 34. Notably, these letters were sent to the address in West Virginia where the Movants maintain their principal place of business.[2] Although the Movants do not have all the similar documents sent by the Government, they believe those were sent to the same address in West Virginia. At the time the suit was brought, the Movants believe that their essential business functions were performed in West Virginia. ("There is a 'longstanding principle that the jurisdiction of the Court depends upon the state of things existing at the time the suit was brought." *Keene Corp. v. U.S.,* 113 S.Ct. 2015, 2036 (1993) (*quoting Minneapolis & S.L.R. v. Peoria & P.U.R. Co.,* 270 U.S. 580, 586 (1926) ("The jurisdiction of the lower court depends upon the state of things existing at the time the suit was brought.")). Therefore, at the time that the Complaint was filed the principal office for the Movants was located in West Virginia.

### III. Plaintiff's Reliance on the 2016 Consent Decree as a Basis for Personal Jurisdiction is Misplaced.

Plaintiff argues that the consent decree filed by four of the Movants, Dynamic Energy, Inc., Justice Highwall Mining, Inc., Nufac Mining Company, Inc., and Pay Car Mining, Inc., on September 30, 2016, accepting this Court's jurisdiction is evidence that the Court should exercise personal jurisdiction in this case based upon allegations in the consent decree. However, the Plaintiff ignores the applicable law on the issues of prior appearances and judicial estoppel and cites no law to support its position.

---

[2] *See* Notifications of Delinquency attached as Exhibit D.

9

A party's appearance in a prior litigation in a forum does not comprise a waiver of personal jurisdiction in a subsequent matter. *See Klinghoffer v. S.N.C. Achille Lauro Ed Altri–Gestione, etc.,* 937 F.2d 44, 50 n.5 (2d Cir.1991); *Fesniak v. Equifax Mortg. Servs. LLC,* 2015 U.S. Dist. LEXIS 66238, *16 (D.N.J. May 20, 2015); *EEOC v. Vicksburg Healthcare, LLC*, 2014 U.S. Dist. LEXIS 132700, *17 (S.D.Miss. Sept. 22, 2014); *Brainware, Inc. v. Scan–Optics, Ltd.,* 2012 U.S. Dist. LEXIS 77337, *10 (E.D.Va. May 9, 2012); *Alkanani v. Aegis Def. Servs., LLC,* 976 F.Supp.2d 13 (D.D.C.2014); *appeal dismissed*, 2014 U.S.App. LEXIS 18148 (D.C.Cir. Aug. 11, 2014).

The doctrine of judicial estoppel "typically applies when, among other things, 'a party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.'" *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 170 (2010) (*quoting New Hampshire*, 532 U.S. at 750). "The doctrine should be employed when a litigant is playing fast and loose with the courts, and when intentional self-contradiction is being used as a means of obtaining unfair advantage." *John Hancock Life Ins. Co. v. Abbott Labs*, 863 F.3d 23, 34 (1st Cir. 2017) (internal quotations marks and citation omitted). The party to be estopped must take positions that are mutually exclusive, must have persuaded a court to adopt or rely on the earlier position, and "must stand to derive an unfair advantage if the new position is accepted by the court." *RFF Family P'ship, LP v. Ross,* 814 F.3d 520, 528 (1st Cir. 2016) (internal quotation marks and citation omitted). Judicial estoppel does not apply here.

The fact that four of the Movants participated as defendants in this Court in 2016 without raising a personal jurisdiction defense is insufficient to confer personal jurisdiction in this case. Other than the issue discussed above with respect to the OSMRE Complaint, the Movants have

10

never taken a contrary position to the one it asserts here; that is, the Movants have never tried to persuade the Court that personal jurisdiction ever existed over them. Rather, the Movants simply chose not to raise the personal jurisdiction defense in 2016. The Plaintiff has failed to show that the Movants are attempting to make intentional self-contradicting statements to gain an unfair advantage by asserting a personal jurisdiction defense now. The Movants did not waive their constitutional right to raise a personal jurisdiction defense simply because the defense was never raised in previous litigation or because they have previously appeared before this Court. Therefore, the Movants' appearance in this Court in 2016 cannot serve as a basis for exercising personal jurisdiction over them in this case.

### III.  Plaintiff Failed to Show a Basis for General Jurisdiction.

In its Response, the Plaintiff contends that the Court has general jurisdiction over the Movants based upon 1) allegations made in a previous filing in this Court; 2) the Movants' parent company's alleged business contacts with the Western District of Virginia; and 3) the Controller's office location. Specifically, the Plaintiff first argues that four of the Movants identified their principal place of business as being in Roanoke, Virginia in the OSMRE Complaint. See P's Response p. 11. As discussed above, this erroneous allegation was the result of an inadvertent mistake made by counsel in that case. See Ezzell Declaration. In any event, a corporation's principal place of business is not established simply though a conclusory assertion. Instead, it is the result of an analysis of several factors to determine where the "nerve center" is located. See *Hertz Corp.,* 130 S.Ct. at 1184.

Here, as evidenced by the affidavit of Mr. Lusk, the "nerve center" can hardly be classified as being in Roanoke at the time of filing. Mr. Lusk has ultimate responsibility and authority regarding the "direction, control, and coordination" of the Movants' mining operations and does

11

so exclusively in West Virginia. Patrick Graham has ultimate responsibility for the Movants' compliance with the requirements of the Mine Act and the regulations promulgated pursuant to the Mine Act and does so exclusively in West Virginia. In fact, the delinquency notification letters referenced by the Plaintiff in its Complaint pertaining to the outstanding civil penalty assessments at issue were addressed to each Movant and sent to a location in West Virginia.[3] Finally, since David Harrah was hired May 5, 2018, he has been primarily responsible for the accounting functions for each Movant and does so in West Virginia.

Second, the Plaintiff argued that the "business operations" of the Movants' parent company, Bluestone Resources Inc., are conducted out of Virginia and that James Justice III, the Controller, operates his business out of Virginia. Pl's Response, p. 13. However, this is a misapplication of the general jurisdiction test articulated by the Supreme Court in *Goodyear* and *Daimler*. The Supreme Court has turned away from the fact intensive analysis of substantial business contacts in favor a more streamlined test for general jurisdiction. A corporation is deemed to be "at home" only in the state where it is incorporated and the state where it maintains its principal place of business.

These are the two "paradigm bases for general jurisdiction." *Daimler AG v. Bauman,* 134 S.Ct. 746, 760 *(2014)* (*citing Cf. Hertz Corp. v. Friend*, 130 S.Ct. 1181 (2010). In addition to the state of incorporation and principal place of business, the Supreme Court in *BSNF Ry. Co. v. Tyrrell,* 137 S.Ct. 1549 (2017)*,* explained that in an "exceptional case" a corporation's contacts may "be so substantial and of such a nature as to render the corporation at home in that State." The Court acknowledged the cased relied upon by the Plaintiff, *Perkins v. Benguet Consol. Mining Co.*, 72 S.Ct. 413 (1952), as an exceptional case.

---

[3] *See* Notifications of Delinquency attached as Exhibit D.

12

In *Perkins*, a Philippine mining corporation was forced to cease operations and relocate its corporate president to Ohio from the Philippines during Japanese occupation of the Philippines during World War II. The Court found that the president's "continuous and systematic" contacts with Ohio during this period of his exclusive control of the corporation's extremely limited wartime business activity, all of which occurred in Ohio, was sufficient for a federal court in Ohio to exercise general jurisdiction over the corporation.

Here, unlike *Perkins*, there is nothing that makes this an "exceptional case." Mr. Lusk is responsible for directing the general business activities of the Movants' operations and he does so in West Virginia. Further, unlike *Perkins*, the business activity of the Movants was hardly confined to Virginia. In fact, all the mining activity and the decisions regarding that mining activity, including the activity which led to the underlying civil penalties, occurred in West Virginia. Therefore, the Court does not have general jurisdiction over the Movants because they are neither "at home" in Virginia nor do they have exclusive continuous and systematic" business contacts with Virginia necessary to make this an "exceptional case."

## IV. The Virginia Long-Arm Statute Does Not Reach the Movants' Conduct for the Court to Exercise Specific Jurisdiction.

The Virginia Long-Arm Statute provides that a Virginia court may "exercise personal jurisdiction over a [defendant], who acts directly or by an agent, as to a cause of action arising from the [defendant's] . . . Transacting any business in this Commonwealth; . . . [.]" Va. Code Ann. § 8.01 328.1(A)(1). "When personal jurisdiction 'is based solely upon [the long-arm statute], only a cause of action arising from acts enumerated in [this statute] may be asserted' against the defendant." *Thousand Oaks Barrel Co., LLC v. Deep S. Barrels LLC*, 241 F. Supp. 3d 708, 714 (E.D. Va. 2017) (*quoting* Va. Code Ann. § 8.01–328.1(C)). If the long-arm statute does not reach

defendant's conduct, the inquiry ends; there is no personal jurisdiction over the defendant. *Universal Leather*, 773 F.3d at 558

Here, the Movants are in the business of mining coal and the coal mining activity of each Movant occurred outside of Virginia- a fact that cannot be disputed. The civil penalties at issue in this case are a result of that mining activity and not the result of the accounting functions provided by their parent corporation which temporarily occurred in Roanoke. The Movants cannot reasonably be expected to be brought into Court in Virginia based on civil penalties assessed under the Mine Act for mining activity that occurred outside of Virginia. This cause of action directly stems from the Movants mining activity in West Virginia and the assessment of civil penalties related to that mining activity. Therefore, the Virginia long-arm statute does not reach the Movants alleged conduct and the specific jurisdiction inquiry should end there.

**V.    Conclusion**

Based on the foregoing, the Court should dismiss the Complaint against the Defendants for lack of personal jurisdiction.

Respectfully submitted,

DOUBLE BONUS COAL COMPANY, et al.

By: /s/     Aaron Balla Houchens
             Of Counsel

Aaron B. Houchens, Esq. (VSB #80489)
AARON B. HOUCHENS, P.C.
111 East Main Street
P.O. Box 1250
Salem, Virginia 24153
540-389-4498 (telephone)
540-339-3903 (facsimile)
aaron@houchenslaw.com

Christopher D. Pence (WV Bar # 9095)
HARDY PENCE PLLC
P. O. Box 2548
Charleston, WV 25329
(304) 345-7250 (telephone)
(304) 553-7227 (facsimile)
cpence@hardypence.com

*Counsel for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on this 30th of July 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and the foregoing was electronically transmitted through the CM/ECF system to the following CM/ECF participants:

Jason Scott Grover, Esq.
U.S. Department of Labor - Office of the Regional Solicitor
201 12th Street South, Suite 401
Arlington, VA 22202-5450
202-693-9326
202-693-9392 (Fax)
grover.jason@dol.gov

Krista Consiglio Frith, Esq.
Laura Day Rottenborn, Esq.
U.S. Attorney's Office for the Western District of Virginia
310 First Street, S.W., Room 906
Roanoke, Virginia 24008
(540) 857-2250
(540) 857-2614 (Fax)
krista.frith@usdoj.gov
laura.rottenborn@usdoj.gov

/s/ Aaron Balla Houchens

15