## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE  DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | )   **Case No. 7:19-CV-00354** |
| **SOUTHERN COAL CORPORATION, ET AL.** | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

### UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT

In 2019, the United States sued the defendant coal mine owners and operators to collect five-years' worth of unpaid Mine Safety and Health Administration (MSHA) civil penalties, totaling $4,776,370.04. Compl. ¶ 2, ECF No. 1. In 2020, the parties signed a settlement agreement whereby Defendants agreed to pay $4,065,578.29 for the civil penalties sought in the Complaint, plus $1,064,547.18 for additional MSHA civil penalties not sought in the Complaint. ECF No. 44. To pay the $5,130,125.47, Defendants agreed to an upfront payment followed by monthly payments of $102,442.00 to pay the debt in full by March 1, 2024. *Id.* In exchange, the United States agreed it would not seek additional interest or the 10% surcharge authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3011(a). Defendants have shirked their payment obligation and breached the settlement agreement. Now, five months after the debt was due to be paid in full, Defendants still owe $579,041.53. Despite the government's numerous reminders about Defendants' tardy and missing payments, Defendants refuse to pay. This blatant violation warrants a finding of civil contempt.

## BACKGROUND

Defendants collectively owned and operated over 50 coal mines. MSHA conducted regular statutorily required inspections at Defendants' mines. *See* 30 U.S.C. § 813(a) (requiring regular inspections of mines). As a result of those inspections, MSHA issued hundreds of citations and orders for violations of the Federal Mine Safety and Health Act (Mine Act) and MSHA's mandatory health and safety standards. *See generally* 30 U.S.C. § 801, *et seq.* & 30 C.F.R. Pts. 75 & 77. Between 2014 and 2019, Defendants failed to pay civil penalties for those violations, totaling $4,776,370.04, inclusive of interest up to the date of the Complaint. Compl. ¶ 2, ECF No. 1.

As a result of Defendants' failure to pay the civil penalties, the United States filed suit under the Mine Act and the Federal Debt Collection Procedures Act (FDCPA). *Id.*; 30 U.S.C. §§ 818(a); 820(j); 28 U.S.C. § 3001, *et seq*. After initial motion practice, the parties reached a settlement agreement. On April 1, 2020, the parties filed a Joint Stipulation for Consent Judgment (ECF No. 44) in which Defendants acknowledged they owed the MSHA civil penalties sought in the Complaint as well as another set of civil penalties not sought in the Complaint. Joint Stip., ECF No. 44. Defendants agreed to pay $5,130,125.47 to resolve the civil penalties in the Complaint as well as an addition 85 MSHA civil penalties not included in the Complaint. *Id.* ¶¶ 6, 8. The United States agreed Defendants would not have to pay post-judgment interest or the 10% surcharge authorized by the FDCPA, 28 U.S.C. § 3011(a). *Id.* ¶ 14.

To pay the $5,130,125.47, Defendants agreed to make an initial $212,909.44 payment by April 15, 2020, then make monthly consecutive monthly payments of $102,442.00 by the first of each month until the debt was paid in full in April 2024. *Id.* ¶¶ 10-11. Pursuant to the parties' Joint Stipulation, the Court entered a Consent Judgment reflecting these payment terms. ECF No. 45.

The only thing consistent about Defendants' payments is the fact they are consistently late. *See, e.g.*, Notice of Noncompliance ¶ 4, ECF No. 46. For example, the United States filed a notice of non-compliance on January 6, 2022, because Defendants failed to pay their December 2021 and January 2022 payments. *Id*. ¶ 6. After the United States filed its notice of non-compliance, Defendants paid their December 2021 and January 2022 payments.

On March 31, 2022, the United States filed a Motion to Compel Compliance with the Consent Judgment after Defendants failed to make their March 2022 payment. Mot. to Compel, ECF Nos. 49 & 50. Days after the United States' Motion to Compel, Defendants made their March 2022 payment. *See* ECF No. 50.

In May 2023, Defendants had missed four monthly payments, again forcing the United States to file a Motion to Compel Compliance with the Consent Judgment. ECF Nos. 52 & 53. On June 20, 2023, the Court granted the United States' Motion, ordering Defendants to pay the delinquent sum within 10 days of the Order and requiring Defendants to "tender all future payments required under the Consent Judgment (ECF No. 45) until Defendants' total debt is satisfied." ECF No. 54. After entry of the Court's Order, Defendants represented to the government they lacked the financial means to comply with the Order. Based on Defendants' representations that they would obtain the financial ability to comply with the Consent Judgment's payment schedule, the government agreed to give them ten weeks to make weekly catch-up payments. ECF No. 55.

Unfortunately, Defendants failed to comply with that agreement too and still owe $579,041.53 to the government. *See* Payment History, Ex. A. The United States has notified Defendants' counsel of past due amounts at least monthly since August 14, 2023, when the first catch-up payment was late. *See* Emails, Ex. B. Despite these considerable efforts, Defendants have

failed to make their required payments or otherwise indicate why they are unable to comply with the Consent Judgment and Court's Order Compelling Compliance.

## STANDARD OF REVIEW

This Court has inherent authority to enforce the terms of its Consent Judgment. *See Thompson v. U.S. Dep't of Housing & Urban Dev.*, 404 F.3d 821, 833 (4th Cir. 2005) ("[T]he court's inherent authority over its own judgment would have provided it with the continuing authority to enforce the Consent Decree against HUD."); *Document Techs., LLC v. Taylor & Talker P.C.*, 2023 WL 2059076, at *1 (E.D. Va. Feb. 16, 2023) ("To obtain compliance with an existing order, a district court has inherent authority to hold any party in contempt."). Further, the Court "retain[ed] jurisdiction with respect to all matters arising from or related to the implementation of th[e] Order" granting the United States' Motion to Compel Compliance with the Consent Judgment. ECF No. 54.

A finding of civil contempt requires the moving party to prove "by clear and convincing evidence: (1) the existence of a valid court order; (2) the order was in the moving party's 'favor'; (3) a knowing violation of the terms of the order; and (4) the moving party suffered harm from the violation." *Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 461 (4th Cir. 2020). "Once the movant establishes these elements, the burden shifts to the defendant to show good faith in making all reasonable efforts to comply with the . . . order." *Id.* at 462 (cleaned up).

Additionally, the parties' settlement agreement contemplated that Defendants' failure to comply with the settlement agreement could lead to civil contempt proceedings. *See* ECF No. 44 ¶ 17 ("Defendants acknowledge that any noncompliance with the terms and conditions of this Joint Stipulation for Consent Judgement . . . could lead to the institution of civil contempt proceedings against Defendants.").

**ARGUMENT**

Defendants appear to believe they are above the law. Defendants failed to comply with the Mine Act, which resulted in millions of dollars of penalties. They then refused to pay those penalties for years. The government was forced to file suit to collect the unpaid debt. Defendants then agreed to pay the debt in a written settlement agreement. Numerous court orders have been entered requiring Defendants to comply with the settlement agreement. Yet time and again, they have not done so.

The government gave Defendants ample time to complete their payment obligations and filed three requests with the Court in attempt to obtain Defendants' compliance, all to no avail. At this juncture, civil contempt of Defendants is warranted. Alternatively, the Court should hold a show cause hearing whereby Defendants, through their corporate representatives, demonstrate to the Court why they should not be found in civil contempt for failure to comply with the Court's orders.

All four elements exist for a finding of civil contempt here.

First, there are two valid court orders at issue, as discussed above: the Consent Judgment Order (ECF No. 45) and the Order Granting the United States' Motion to Compel Compliance with the Consent Judgment (ECF No. 54) ("Order Compelling Compliance").

Second, both orders were in the United States' favor. The Consent Judgment Order accepted Defendants' liability for the debts sought in the Complaint and required Defendants to make payments to the United States. Additionally, the Order Compelling Compliance again ordered Defendants to tender the payments under the Consent Judgment until the total debt is satisfied. *See Document Techs., LLC v. Taylor & Walker P.C.*, 2023 WL 2059076, at *2 (E.D. Va. Feb. 16, 2023) (noting a consent decree was in the plaintiff's favor where defendant had to pay

plaintiff a monetary sum in fixed installments). Therefore, these two Orders are in favor of the United States.

Third, Defendants knowingly violated these orders by not making the requisite payments. *See Adkins v. Arvinger*, 2023 WL 9318487, at *5 (E.D. Va. Dec. 7, 2023) (finding the defendants knowingly violated the consent order by "fail[ing] to remit the full amount immediately owed under the Settlement Agreement"). The government informed Defendants of their delinquency, through counsel, on numerous occasions, yet Defendants still failed to make payments. *See id.* (discussing plaintiff counsel's emails to defense counsel in attempts to obtain compliance); *W. Va. Highlands Conservancy v. Lexington Coal Co., LLC*, 2023 WL 8006418, at *5 (S.D.W. Va. Nov. 17, 2023) ("It simply cannot be said that Lexington Coal is not knowledgeable of its obligations under the Court's orders; they have been repeated ad nauseum."); *Williams v. Estates LLC*, 2023 WL 2974078, at *5 (M.D.N.C. Apr. 17, 2023) ("To decide whether one had actual or constructive knowledge of their violations, 'the Court looks not only to the facts surrounding the immediately involved violations but considers as well the history and context of the litigation between the parties.'" (quoting *Schwartz v. Rent-A-Wreck of Am.*, 261 F. Supp. 3d 607, 614 (D. Md. 2017))).

Last, the government has been harmed by Defendants' failure to make these payments in several ways. The government has not received the benefit of our bargain. We have not obtained the settlement amount on the schedule that was agreed to by Defendants, and we have foregone significant interest the debt has accumulated since obtaining the Consent Judgment. *See Adkins*, 2023 WL 9318487, at *6 (finding the plaintiff was harmed by not getting its "benefit of the bargain"). Defendants' continued failure to comply with the Court's Orders has caused the government to continually request payment from Defendants as well as file the instant motion. *See Davis v. Davis*, 2022 WL 2110410, at *5 (E.D.N.C. June 10, 2022) (noting the movants were

harmed by having to litigate the contempt motion); *Vient v. Paxton Media Grp.*, 2022 WL 204570, at *12 (M.D.N.C. Jan. 24, 2022) (finding contempt warranted when the nonmovant "flouted deadlines even after requesting and receiving extensions," causing the movant to "bear the expense of seeking appropriate relief"). Additionally, the government continues to be harmed by these unpaid MSHA civil penalties. Congress relies on monetary civil penalties under the Mine Act as a means to compel operators to comply with mandatory health and safety standards. *See Coal Emp't Project* v. *Dole*, 889 F.2d 1127, 1132–33 (D.C. Cir. 1989) (citing the Mine Act's legislative history at 123 Cong. Rec. 4388 (1977)). The Mine Act's stated purpose is to protect the health and safety of the industry's most precious resource—the miner. 30 U.S.C. § 801(a). Defendants' continual evasion of their financial obligations under the Mine Act removes the incentive of these Defendants—and other mining companies—from complying with MSHA's health and safety standards designed to protect the nations' miners.

All four elements exist for a finding civil contempt, and Defendants' blatant disregard for this Court's orders warrants such a finding.

## CONCLUSION

For the foregoing reasons, the Court should find Defendants in civil contempt. Alternatively, the Court should hold a show cause hearing whereby Defendants, through their corporate representatives, demonstrate to the Court why they should not be found in civil contempt for failure to comply with the Court's orders.

Respectfully submitted,

CHRISTOPHER R. KAVANAUGH
United States Attorney

Date:  August 6, 2024                    /s/ Laura Day Taylor
                                         Laura Day Taylor
                                         Assistant United States Attorney
                                         Virginia State Bar No. 94021
                                         Illinois State Bar No. 6289334
                                         Laura.Taylor@usdoj.gov

                                         /s/ Krista Consiglio Frith
                                         Assistant United States Attorney
                                         Virginia Bar No. 89088
                                         United States Attorney's Office
                                         P. O. Box 1709
                                         Roanoke, VA 24008-1709
                                         Telephone: (540) 857-2250
                                         Facsimile: (540) 857-2283
                                         Krista.Frith@usdoj.gov

                                         /s/ Jason S. Grover
                                         Special Assistant United States Attorney
                                         Illinois Bar No. 6256032
                                         Counsel for Trial Litigation
                                         Mine Safety and Health Division
                                         Department of Labor
                                         201 12th Street South, Suite 401
                                         Arlington, VA 22202
                                         TEL (202) 693-9326
                                         FAX (202) 693-9392
                                         grover.jason@dol.gov
                                              Counsel for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was electronically filed via the Court's CM/ECF system, which will send notice to all counsel of record.

*/s/ Krista Consiglio Frith*
Krista Consiglio Frith
Assistant United States Attorney
